Fred Lee **CLARK**

v.

**R. M. OLIVER, Superintendent of the Virginia State Farm.**

**Civ. A. No. 196–71–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 17, 1972.

John M. McCarthy (Court-appointed), Richmond, Va., for plaintiff.

C. Tabor Cronk, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The matter before the Court on a claim by petitioner, a Virginia state prisoner, of an alleged violation of his Sixth Amendment right to a speedy trial, is, after having been fully briefed by counsel for both parties, now ready for disposition. Jurisdiction of the Court is attained by virtue of Title 28, § 2241–2254 of the United States Code. While petitioner has not technically exhausted his State remedies, at the request of the respondent further exhaustion will not be required.

Petitioner complains of two convictions by the Circuit Court of Greensville County, Virginia, under date of April 22, 1955, wherein on a charge of felonious shooting he was sentenced to five years confinement in the penitentiary, and on a second charge of breaking and entering with intent to commit larceny he was, on June 10, 1955, sentenced to eighteen years confinement, said sentence to run consecutively to the five year sentence.

The petitioner has concluded the service of the five year sentence aforesaid.

The matter is before the Court under a stipulated set of facts, as follows:

1. On April 22, 1955, the petitioner was tried by the Circuit Court of Greensville County on charges of felonious shooting with intent to maim and breaking and entering. The petitioner thereafter sentenced on June 10, 1955 to a term of five (5) years on the felonious shooting charge and eighteen (18) years on the breaking and entering charge. The sentences were made to run consecutively.

 The petitioner has completed serving the felonious shooting sentence of five (5) years of which he complains here and is presently serving the balance of the eighteen (18) year sentence for breaking and entering.

2. The offenses for which the petitioner was tried and convicted were committed on July 27, 1952, while the petitioner was an escapee from detention in Warrenton, North Carolina. Shortly after the offenses were committed the petitioner was re-captured and returned to detention in North Carolina.

 Indictments were returned against the petitioner by the Circuit Court of Greensville County in October 1952 and detainers were lodged with North Carolina authorities at about the same time. This was approximately two and one-half (2½) years prior to the time the petitioner stood trial on charges of felonious shooting and breaking and entering.

3. The petitioner was discharged from North Carolina on June 8, 1954 and thereafter incarcerated in Petersburg, Virginia until March of 1955. He was then released to Greensville County authorities for trial in Greensville Circuit upon the aforesaid charges in April of 1955.

4. Within the first three months of petitioner's capture and return to detention in Warrenton, North Carolina in 1952, he was informed by North Carolina authorities that Virginia had a "detainer" against him. However, petitioner was neither formally made aware of the nature of the charges against him nor of the allegations contained in the indictments returned in the Greensville Circuit Court until his return to Greensville County in April of 1955.

5. The petitioner never made a demand upon Virginia authorities for an earlier trial. However, at this time the petitioner possessed only a third grade elementary education which he had received as a child in a one-room country school in North Carolina. With this educational limitation, the petitioner neither knew to whom to write to secure an earlier release date nor how to compose a demand upon Virginia authorities.

6. Counsel was not appointed to represent the petitioner on the charges against him until April 19, 1955. However, counsel for petitioner was informed at some unknown time, while petitioner was still incarcerated by North Carolina authorities, that he would later be appointed to represent petitioner on the charges of breaking and entering and felonious shooting. There is no evi-

dence, however, that his trial counsel undertook any of his duties as counsel prior to his formal appointment.

7. The evidence adduced by the Commonwealth at petitioner's trials on the charges of felonious shooting and breaking and entering indicated that another individual had been an accomplice in the breaking and entering. The petitioner entered a plea of guilty to the charge of breaking and entering but has at all times denied his guilt with respect to the charge of felonious shooting.

8. The Commonwealth's evidence against the petitioner, insofar as the charge of felonious shooting was concerned, rested solely on identification of the petitioner by the occupants of the home which had been broken into. The petitioner has steadfastly maintained that the accomplice on the breaking and entering charge, who was not available at the time of petitioner's trial for comparison with petitioner by the Commonwealth's witnesses, was the perpetrator of the felonious shooting with which petitioner was charged.

9. The petitioner had no witnesses to testify in his behalf and so informed his counsel at the time of the latter's appointment. Petitioner's counsel interviewed the Commonwealth's witnesses, whom he knew personally, and investigated all relevant facts of the case prior to the date of trial.

10. Petitioner's trial counsel has heretofore stated that had the petitioner not been incarcerated in North Carolina, he would have delayed the trial as much as possible due to adverse public sentiment in the community.

In addition to the aforementioned stipulated facts, the record discloses that at the time in question, petitioner having had very little formal education was incapable of reading. The record shows that the sentence of five years was imposed after trial on a not guilty plea.

The record also discloses that until the date counsel was appointed for him on April 19, 1955, he was not cognizant of the technical nature of the charges against him.

While no reason is assigned by the respondent for the failure to try petitioner for a period of approximately two and one-half years, the respondent's position is two-fold: (1) he contends the petitioner waived his right to a speedy trial by his failure to make demand upon the Virginia authorities for trial while he was incarcerated in North Carolina and later in the Federal Reformatory in Virginia; and (2) the delay did not in any manner prejudice petitioner's rights at trial.

■ Questions concerning alleged violations of one's constitutional right to a speedy trial involve what has been characterized by the United States Supreme Court as "the difficult and sensitive balancing process in order to reach the appropriate result. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It is now settled that the right to a speedy trial is one of a fundamental constitutional nature and that right is safeguarded by the Sixth Amendment to the United States Constitution which is applicable to the states through the due process clause of the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The right which petitioner now asserts is one which has been held in this Circuit to be retroactive. See Lassiter v. Turner, 423 F.2d 897 (4th Cir. 1970). The issues raised can be included only after a functional analysis of the right involved, in the particular context of the case. See *Barker, supra.* See also, Beavers v. Haubert, 198 U.S. 77, at 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905).

As pointed out by Mr. Justice Powell in *Barker, supra,* the guaranty of a speedy trial has been dealt with by the United States Supreme Court on infrequent occasions. No mathematical formula may be applied. It is well settled, however, that any appreciable delay between arrest and trial in and of itself raises the issue and at the very least places on the prosecution a heavy burden of demonstrating that the defendant's Sixth Amendment right has not been abridged. See Coleman v. United States, 142 U.S.App.D.C. 402, 442 F.2d 150 (1971). *Barker, supra,* sets forth four related factors which must be considered with other relevant circumstances in determining whether one's constitutional right in regard to which the Court addresses itself has been abridged, and they are as follows: (1) length of delay; (2) reason therefor; (3) defendant's assertion of the right; and finally, (4) prejudice to the defendant. It is the Court's responsibility in applying the "balancing test" suggested by that opinion to view the conduct of both the prosecution and the defense. Trial courts are bound to approach these matters on an ad hoc basis.

In the instant case, the Court finds that there was a responsibility on the Virginia officials after filing the detainer referred to in the stipulated facts, to make efforts to procure temporary release of the defendant from North Carolina, and to hold a prompt hearing in accordance with the Sixth Amendment guaranty of the right to a speedy trial.[1] This issue has been settled in this Circuit in the case of Pitts v. State of North Carolina, 395 F.2d 182 (4th Cir. 1968). Indeed the basic protections intended to be afforded by a speedy trial are equally, if not more, significant in situations wherein the accused is imprisoned in another jurisdiction awaiting trial. See Smith v. Hooey, *supra,* 393 U.S. at 378, 89 S.Ct. 575; Taylor v.

United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956). The instant case gives rise to a factual situation which precludes any viable argument, although admittedly none is offered, that because he was in a foreign jurisdiction there was a lack of duty on Virginia officials to attempt to secure release of the accused for trial, for the facts are that for at least eight months prior to trial petitioner was incarcerated within the State of Virginia.

The Court concludes that the delay in the instant case raises a presumption of prejudice as to the conviction on felonious assault to which the Court will address itself further, and requires further analysis into the remaining factors bound to be considered pursuant to *Barker, supra.*

It should be noted here that the Court does not find it necessary to address itself to the applicability of Virginia Code Section 19.1–191, as amended, which requires that every person held in any court for trial shall be discharged from prosecution if there be three regular terms of the Circuit Court in which the case is pending after he is so held without a trial. At the very least, however, that statute is indicative of the legislative efforts to preclude any undue delay giving rise to a deprivation of one's right to a speedy trial. As the Court has already indicated, no valid reason for the delay in the instant case has been asserted.

Detainers were lodged with the North Carolina authorities in October 1952. Petitioner was discharged from that State on June 8, 1954, was then incarcerated in Federal custody within the geographical boundaries of Virginia until March 1955, when he was released to the Greensville County officials for trial which was held on April 22nd of that year, with sentencing taking place on June 10, 1955. It is to be noted that in spite of the long delay, he was tried

---

1. It is to be noted that since 1970, there has been in effect Va.Code Sec. 53–304.1 et seq., which provides a prompt and efficient procedure for the disposition of detainers.

within three days after counsel was appointed for him.

■ The third factor which the Court must consider in its exercise of the "balancing test" is the responsibility of the defendant to assert his right. This record reflects that the petitioner was never formally made aware of the nature of the charges on which he was ultimately tried until his incarceration by the Greensville County authorities in 1955. The right to a speedy trial is one which the State as well as the petitioner shares the burden of effecting. See *Dickey, supra,* 398 U.S. at 37–38, 90 S. Ct. 1564; Hodges v. United States, 408 F.2d 543–551 (8th Cir. 1969); Barker, supra, 407 U.S. at 514, 92 S.Ct. 2182. The respondent's argument that the right has been waived by virtue of petitioner's failure to insist upon trial is based upon a presumed waiver of a fundamental right by virtue of inaction, which Mr. Justice Powell describes as inconsistent with the United States Supreme Court's pronouncement on waiver of constitutional rights.

■ This Court is duty bound to "indulge every reasonable presumption against waiver," see Aetna Ins. Co. v. Kennedy, to Use of Bogash, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). Before one can conclude that there has been an effective waiver, the record must show, and this record fails to show, an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Indeed in the instant case, as a practical matter, the petitioner was powerless to assert his right by reason of his incarceration, compounded by ignorance and lack of legal counsel.

■ The final factor which must be considered is the prejudice, if any, to the petitioner, and in the instant case that factor is the most difficult to resolve. Unquestionably while petitioner did not know of the precise charges pending against him, he had been advised and knew for a period of approximately two and one-half years that a detainer was being held against him by Virginia authorities. The anxiety, concern and adverse effects of such a situation have been well documented. At the very least he was prejudiced by virtue of living under a cloud of suspicion and anxiety, and as to one of the convictions under attack the evidence discloses that a material party was not available by the time the trial came to pass. See *Pitts, supra,* 395 F.2d at 188; *Barker, supra,* 407 U.S. at 514, 92 S.Ct. 2182; Wickline v. Cox, (4th Cir. 1972).

The record discloses that petitioner in the instant case while admitting his responsibility in the charge of breaking and entering, consistently denied responsibility for the charge of felonious shooting with intent to maim. On that particular charge he had steadfastly maintained that his accomplice on the breaking and entering charge was the perpetrator. Petitioner was convicted largely on the basis of personal identification, evidence which grows less reliable over a protracted period of time. *The failure of being able to produce a witness, a party whom petitioner contended was the perpetrator of the offense, gives rise to a strong possibility that the defense was impaired,* and the Court holds as to the charge of felonious shooting that the delay resulted in prejudice to the petitioner.

■ As to both convictions it must be borne in mind that we deal here with a primary function of every criminal trial, and that is the search for the truth. A mere demonstration of the likelihood, or reasonable possibility, that same was severely hampered, is sufficient in the balancing factors to afford relief to the petitioner in reference to the felonious shooting conviction. As to the breaking and entering conviction, considering the search for the truth the Court finds that there was no prejudice to petitioner, for the record reveals that he always admitted his guilt therein and

1351

indeed testified in his habeas proceeding as follows:

Q. You fully understood the nature and effect of your plea on breaking and entering? You knew what you were doing then?

A. Yes, Sir.

Q. And that meant that you did break and enter in this house, and you wanted to tell the Court that you did. Is that right?

A. Yes, Sir.

In view of that evidence it is apparent that as to that case no serious prejudice arose by the failure of the State to afford Clark a speedy trial.

Having so concluded, the Court is duty bound to assert the only available effective remedy as to the constitutional deprivations incurred by the petitioner, by voiding the conviction of felonious shooting with intent to maim upon which petitioner was sentenced to a term of five years.