## PEOPLE v COLLINS

1. CRIMINAL LAW—SPEEDY TRIAL—CONSTITUTIONAL LAW.

The individual's right to a speedy trial in a criminal prosecution is secured by the state and Federal Constitutions; however, the people of the state have an equal concern in a speedy trial to act as a deterrent to potential criminals (US Const, Am VI; Const 1963, art 1, § 20; MCLA 768.1).

2. CRIMINAL LAW—SPEEDY TRIAL—DELAY.

The Michigan Supreme Court in considering length of delay of the trial in a criminal case has always considered the surrounding circumstances of the case and "[w]hat would be a reasonable time in one case would be perhaps unreasonable in another".

3. CRIMINAL LAW—SPEEDY TRIAL—DELAY—TRIAL ON OTHER CHARGE.

Period of slightly less than 6 months of the 15 months between the time defendant was arrested for armed robbery and the time he was tried for that crime can reasonably be charged to defendant in considering the claim of denial of a speedy trial since the prosecutor made the reasonable and fair choice in prosecuting a breaking and entering case first where defendant, while on bail for the armed robbery charge, was arrested for breaking and entering, failed to make bail on that charge, and was tried for that crime within 6 months of arrest.

4. CRIMINAL LAW—SPEEDY TRIAL—DEMAND FOR SPEEDY TRIAL.

Defendant's failure to assert a demand for speedy trial, which was of his own choosing and a result of his own activity, must be weighed heavily against him when considering his claim, on appeal, that he was denied a speedy trial.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 21 Am Jur 2d, Criminal Law § 242.

Accused's right to speedy trial under Federal Constitution, 21 L Ed 2d 905.

[2, 6] 21 Am Jur 2d, Criminal Law § 251.

[3] 21 Am Jur 2d, Criminal Law § 249.

[4] 21 Am Jur 2d, Criminal Law § 254.

[7] 21 Am Jur 2d, Criminal Law § 252.

5. CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE—PRETRIAL INCARCERA-
TION—WITNESSES.

There are two types of prejudice which a defendant may experi-
ence, prejudice to his person and prejudice to his defense in
considering the claim of denial of a speedy trial; prejudice to
his person would take the form of oppressive pretrial incarcera-
tion leading to anxiety and concern and prejudice to his de-
fense might include key witnesses being unavailable; every
incarceration results in a degree of prejudice to the person.

6. CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE—PRESUMPTION.

Prejudice will be assumed after an 18-month delay in bringing a
defendant to trial; prior to that time the burden is on the
accused to show that he was actually harmed; after 18 months,
the burden shifts to the prosecution to show there was no
injury.

7. CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE.

Defendant was not denied his right to a speedy trial, although
there was a 15-month delay between his arrest and trial, where
the defendant was himself a substantial reason for the delay,
his assertion of his right to a speedy trial came so late as to be
devoid of any sincerity or conviction, and the prejudice from
incarceration was not great enough to swing the balance in his
favor.

Appeal from Court of Appeals, Division 1, Levin,
P. J., and Quinn and V. J. Brennan, JJ., affirming
Recorder's Court of Detroit, George W. Crockett,
Jr., J. Submitted October 3, 1972. (No. 3 October
Term 1972, Docket No. 53,761.) Decided December
21, 1972.

36 Mich App 400 affirmed.

Harold Collins was convicted of armed robbery.
Defendant appealed to the Court of Appeals. Af-
firmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*

Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Koenig, LeBost & Jobes* and *George Matish,* for defendant on appeal.

WILLIAMS, J. The issue in this case[1] is whether defendant was deprived of his right to a speedy trial[2] under the new rule set forth in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972) which reads:

"A balancing test necessarily compels courts to approach speedy trial on an *ad hoc* basis. * * * Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant." 407 US 514, 530.[3]

---

[1] The parties were also requested to present briefs on the advisability of setting a trial deadline rule similar to that followed by the Second Circuit (Appendix, 28 USCA, Supp 1971) and the New York Courts (McKinney's Consolidated Laws of New York Anno., Cum-Supp. Pamphlet, May 1972). See also 71 Colum L Rev 1059 (1971) for a commentary on the Second Circuit Rules.

The ABA Speedy Trial Standard (§ 2.1) relating to Speedy Trial states in part that "[a] defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event." The ABA rules relating to Speedy Trial suggest a 4-month period (Rule 2.1).

The Supreme Court in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972) observed that though the constitution did not require the right to be quantified into a specified number of days or minutes, they did not disapprove of a "presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought." 407 US 514, 530, fn 29.

[2] Justice SWAINSON considered speedy trial and *Barker v Wingo, supra,* as a secondary issue in *People v Grimmett,* 388 Mich 590 (1972). There a 19-month delay between arrest and indictment was found not to violate the right to a speedy trial. The Court found no evidence of prejudice. More crucial was the fact that the defendant in *Grimmett* never demanded a trial. Though this was not a waiver of the right, it was weighed strongly against him in the balance.

[3] For recent cases applying *Barker* see *United States v Strunk,* 467

## I. *FACTS*

The facts involve a time sequence from September 4, 1968, to June 15, 1970. During this time, defendant was charged with two other crimes, one before and one after the armed robbery of this case.

On September 4, 1968, a warrant was issued against defendant for *entering* without breaking (#1). On November 1, 1968, defendant was arraigned and released on a personal bond of $1,000.

On January 5, 1969, defendant was arrested on a charge of armed *robbery* (#2 and the instant case) and bond was set at $3,000. On January 13, 1969, the preliminary examination was waived and the bond reduced to $2,000 which defendant met. He was then released. On January 22, 1969, defendant appeared for arraignment on the information.

On August 21, 1969, the defendant failed to appear in court on the *entering* without breaking charge (#1), therefore his bond was forfeited and a *capias* issued. On August 25, the defendant appeared in court on the *entering* count (#1). At this time the *capias* was set aside, bond reinstated and the trial adjourned to January 26, 1970.

On September 15, 1969, the defendant was ar-

F2d 969 (CA 7 1972) (denial of right found where delay was 10 months and there was prejudice in delaying the commencement of the Federal sentence); *Clark v Oliver,* 346 F Supp 1345 (ED Va, 1972) denial of right found where delay was 2-1/2 years and there was prejudice to his defense due to the absence of a witness); *United States ex rel Stukes v Shovlin,* 464 F2d 1211 (CA 3, 1972) (no denial of right found though delay was 14 months and demand was continuous); and *United States v Hanna,* 347 F Supp 1010 (D Del, 1972) (denial of right found where delay was 11 months and was entirely for the government's benefit even though defendant neither made a demand nor showed he had been prejudiced). It is clear that each of the court's decisions was based on the peculiar circumstances of the case and cannot be relied upon in deciding this case.

rested for a third time on a different count of *breaking* and entering (#3). He was unable to make bond and was incarcerated in Wayne County Jail.

On October 28, 1969, defendant failed to appear on robbery armed charge (#2) and a *capias* was entered. He was in a different courtroom that day on a motion to reduce bond on the breaking and entering charge (#3).

On October 29, 1969, a hold was stamped on the *robbery* file (#2) with number and reference to the *breaking* and entering file (#3).

On March 4, 1970, defendant was tried on *breaking* and entering (#3) and on March 9 was found guilty. He was sentenced on March 24, 1970, to 4 to 5 years.

On April 6, 1970, trial on the armed *robbery* charge (#2) commenced, 15 months and 1 day after arrest. Defendant's motion to dismiss for failure to grant a speedy trial was denied. On April 7, 1970, defendant was found guilty of *robbery* not armed and, 2 days later, was sentenced to 7-1/2 to 15 years.

On June 15, 1970, a motion by the prosecutor to dismiss the *entering* without breaking charge (#1) was granted.

Defendant appealed the instant *robbery* (#2) conviction which was affirmed by the Court of Appeals with an amendment to the sentence to reflect a credit of 217 days on his sentence. 36 Mich App 400 (1971). We granted leave to appeal March 3, 1972.

## II. *THE EMERGENCE OF A SPEEDY TRIAL STANDARD*

The individual's right to a speedy trial is secured by Const 1963, art 1, § 20:

"In every criminal prosecution, the accused shall have the right to a speedy and public trial * * * "

and US Const, Am VI:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * * ."

However, the people of the state have an equal concern in a speedy trial to act as a deterrent to potential criminals. The Michigan Legislature has enacted:

"The people of this state and persons charged with crime are entitled to and shall have a speedy trial * * * ." MCLA 768.1; MSA 28.1024.

The complementary nature of the individual right and the state concern was well said in 57 Colum L Rev 846 (1957):

"The importance of prompt trial of criminal offenses in a democratic society derives from the needs of maintaining public order and preserving individual freedom. The social interest in security demands speedy trial, for this facilitates both effective prosecution of criminals and greater deterrence to potential criminals. At the same time, society, in its concern for freedom and for the individual life, seeks to prevent prolonged prosecutions which may develop into persecutions."[4]

The parameters of this right have until recently not been too fully spelled out by the United States Supreme Court or this Court.

Prior to *Barker,* the United States Supreme Court in *Beavers v Haubert,* 198 US 77, 87; 25 S Ct 573, 576; 49 L Ed 950, 954 (1905) stated that: "The right of a speedy trial is necessarily relative.

---

[4] See also 20 Stan L Rev 476, note 1 (1968) which states:

"Society has an interest in the orderly administration of criminal justice quite apart from its humanitarian and pragmatic concern for the welfare of its citizens. A long delay may make it more difficult for the government to prove its charges beyond a reasonable doubt, and it may lessen the deterrent value of a conviction."

It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." These circumstances were defined and limited by a later opinion, *Pollard v United States,* 352 US 354, 361; 77 S Ct 481, 486; 1 L Ed 2d 393, 399 (1957) to "purposeful and oppressive" delays. The United States Supreme Court in *Smith v United States,* 360 US 1, 10; 79 S Ct 991, 997; 3 L Ed 2d 1041, 1048 (1959) stated that "the essential ingredient is orderly expedition and not mere speed." In *United States v Ewell,* 383 US 116, 120; 86 S Ct 773, 776; 15 L Ed 2d 627, 631 (1966) the Court denied that a 19-month delay was unconstitutional *per se* and stated that the right to a speedy trial was relative. And in *United States v Marion,* 404 US 307, 325; 92 S Ct 455, 465–466; 30 L Ed 2d 468, 481 (1971) the Court stated that: "To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case."

The Court in *Dickey v Florida,* 398 US 30; 90 S Ct 1564; 26 L Ed 2d 26 (1970) found a violation of the right where no reason was found for delaying trial for 7 years in light of defendant's diligent and repeated efforts to secure a prompt trial. There was also evidence of actual prejudice to the defendant in the death of two potential witnesses, unavailability of another, and the loss of police records. Mr. Justice Brennan concurring in *Dickey* set out at length the factors to be considered in determining whether the speedy trial right had been violated.[5]

---

[5] See *Dickey, supra,* 47–56. Mr. Justice Brennan states:

"It appears that consideration must be given to at least three basic factors in judging the reasonableness of a particular delay: the source of the delay, the reasons for it, and whether the delay prejudiced interests protected by the Speedy Trial Clause.[12]" 398 US 30, 48.

Justice Brennan concluded his remarks by leaving the door ajar for further action by the United States Supreme Court. He stated:

"These comments provide no definitive answers. I make them only to indicate that many—if not most—of the basic questions about the scope and context of the speedy-trial guarantee remain to be resolved." 398 US 30, 56.

The United States Supreme Court responded to Justice Brennan's remarks by giving careful consideration to the speedy trial problem in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Here, petitioner Barker was not brought to trial for more than five years (including ten months in jail) after he had been arrested. The prosecution obtained numerous continuances for such reasons as the brief illness of the ex-sheriff who was in charge of the investigation, trial of Barker's alleged accomplice, and illness of a key prosecution witness. Barker made no objections to the continuances until 3-1/2 years after the arrest. He was eventually convicted of murder. The United States Supreme Court, in affirming the conviction held:

"A balancing test necessarily compels courts to approach speedy trial on an *ad hoc* basis. * * * Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the

---

"[12] Four factors—length of the delay, the reason for it, prejudice to the defendant caused by it, and waiver by the accused of speedy trial—are often mentioned as the determinants of reasonableness. See, *e.g., United States v Simmons,* 338 F. 2d 804, 807 (C. A. 2d Cir. 1964). The length of the delay, however, appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood that it had prejudicial effects. And waiver by the accused seems relevant primarily to the source of the delay."

delay, the defendant's assertion of his right and preju-
dice to the defendant." 407 US 514, 530.

On balance the United States Supreme Court
stated that though the length of delay and reason
for the delay weighed in Barker's favor, these
factors were outweighed by the facts that he had
suffered no serious prejudice and had failed to
make a prompt and strenuous demand for a
speedy trial. The United States Supreme Court
concluded that Barker was a man who did not
want a speedy trial.[6]

In *Grimmett,* this Court recognized that the rule
in *Barker v Wingo, supra,* quoted in the first
paragraph of this opinion is the present and defini-
tive test in this area.

### III. *THE BARKER RULE APPLIED TO THIS CASE*

A. *Length of Delay*

The delay here was 15 months, including 7
months in jail, from the time of arrest to the time
of trial on robbery armed. The delay in *Barker*
was five years including ten months in jail which
the court found "extraordinary."

The United States Supreme Court stated that:
"The length of delay is to some extent a triggering
mechanism. Until there is some delay which is
presumptively prejudicial there is no necessity for
inquiry into the other factors that go into the

---

[6] The interplay between the individual's right and the state's public
interest was also recognized by the United States Supreme Court in
*Barker v Wingo,* 407 US 514, 519, where the Court in discussing the
nature of the right stated:

"The right to a speedy trial is generically different from any of the
other rights enshrined in the Constitution for the protection of the
accused. In addition to the general concern that all accused persons
be treated according to decent fair procedures, there is a societal
interest in providing a speedy trial which exists separate from and at
times in opposition to, the interests of the accused."

balance." 407 US 514, 530. The Court noted that the delay which would provoke such an inquiry was necessarily dependent upon the "peculiar circumstances of the case." For example they stated that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 US 514, 530–531.

The case here involved a simple street crime of armed robbery. Armed robbery is a serious crime, but its posture for litigation was simple. A cleaning store was robbed by one man who took money from the till. There was one eyewitness. There was no preliminary examination.

The Michigan Legislature has twice made 6 months a criterion, MCLA 767.38; MSA 28.978 and MCLA 780.131; MSA 28.969(1), in fashioning their standard of reasonable time.[7]

---

[7] MCLA 767.38; MSA 28.978 provides:

"Sec. 38. Every person held in prison upon an indictment shall, if he require it, be tried at the next term of court after the expiration of 6 months from the time when he was imprisoned, or shall be bailed upon his own recognizance, unless it shall appear to the satisfaction of the court that the witnesses on behalf of the people have been enticed or kept away, or are detained and prevented from attending court by sickness, or some inevitable accident."

MCLA 780.131; MSA 28.969(1) provides:

"Sec. 1. Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against any inmate of a penal institution of this state a criminal offense for which a prison sentence might be imposed upon conviction, such inmate shall be brought to trial within 180 days after the department of corrections shall cause to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate and a request for final disposition of such warrant, indictment, information or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail."

This Court in considering length of delay has always considered the surrounding circumstances of the case. "What would be a reasonable time in one case would be perhaps unreasonable in another." *Hicks v Judge of Recorder's Court of Detroit,* 236 Mich 689, 690 (1926). In *People v Shufelt,* 61 Mich 237 (1886) this Court decided that a 21-day delay did not violate the constitutional privilege. However, in *People v Den Uyl,* 320 Mich 477 (1948), we held that a delay of 18 months was too long and that prejudice would be presumed after an 18-month delay.

The 15 months, including 7 months in jail, is far in excess of the legislative 6-month standard and much too close to the 18-month rule of *Den Uyl.* It is unduly long unless the other factors require a different result.

### B. *Reason for the Delay*

As the United States Supreme Court stated in *Barker,* "[t]he approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 US 514, 530.

Defendant was arrested on the charge in this case on January 5, 1969. It is true that trial did not begin until April 6, 1970, 15 months later, with defendant spending the last 7 months in jail. However, defendant on September 15, 1969, was arrested for breaking and entering. Failing to make bail he was jailed. Appropriately he was first tried for the jail offense to relieve him of incarceration if not guilty. This trial began on March 4, 1970, or less than 6 months after arrest. Since the prosecutor made the reasonable and fair choice in prosecuting the jail case first, this period of slightly less than 6 months of the 15 months can reasonably be charged to defendant.

Additionally within this period on October 28, 1969, defendant also failed to appear for a trial on the armed robbery charge (#2). Neither the attorney nor the court knew of the subsequent arrest and incarceration. He was in a different courtroom that day on the breaking and entering charge (#3) with a different attorney trying to reduce bond. This was not the fault of the prosecution.

Furthermore, subsequently on March 26, 1970, the defense counsel withdrew, thus creating a further delay over which the people had no control.

During the 9 months after the January 5 arrest (#2) but before the September 15 arrest for the subsequent breaking and entering charge (#3), defendant failed to appear on the August 21, 1969, trial date for his first offense and the court was required to issue a *capias*. Defendant claimed his attorney did not notify him of this trial date. However, he was sent notice by the court. The trial judge said:

"There is an obligation on the part of a defendant, particularly when he is out on the streets, to stay in touch with his lawyer. * * * And I don't credit an alibi by a defendant, who has as much access to a telephone as a lawyer has, who comes in and says his lawyer didn't get in touch with him."

Further, when defendant filed a grievance against his attorney, the State Bar Grievance Board found that defendant "was partially the cause of his own problems in that he failed to notify the court of any change in his address and failed to keep in touch with his attorney."

So apparently during the first nine-month period the prosecution was readying for a trial on the first charge and there was some excuse for not

going to trial on the second arrest. The prosecutor certainly was far from being as diligent as he should have been either to protect the accused's right to a speedy trial or more especially the public's interest in a speedy trial to act as a deterrent to crime. While it was only four months between the first crime and the second, it was over a year between the first arrest and the third. If the prosecutor had moved more timely on the first arrest the public might have been spared the third crime.

To recapitulate on balance the reasons for the delays in this case run against the defendant at least as strongly as against the prosecution. The defendant's posture certainly was not that of a man seeking speedy trial. As Justice Brennan said in concurring in *Dickey v Florida,* 398 US 48; 90 S Ct 1574; 26 L Ed 2d 38 (1969), "[a] defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility."[8]

## C. *Defendant's Responsibility to Assert his Right*

The Supreme Court in *Barker* rejected the rule that a defendant who fails to demand a speedy trial forever waives his right. Rather:

"[D]efendant's assertion or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." 407 US 514, 528.

The Court emphasized, however, that:

"[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 US 514, 532.

---

[8] See also *People v Nawrocki,* 6 Mich App 46, 61 (1967).

In *Grimmett* we also struck down the demand requirement by overruling *People v Foster,* 261 Mich 247 (1933) which required that a defendant demand a speedy trial or waive his constitutional right.

Defendant did not move to dismiss for lack of speedy trial until April 6, 1970. His trial in this case started the next day. Defendant claims that he did not have the legal expertise to bring on his own trial and that he did not have the opportunity being incarcerated in the Wayne County Jail. He further asserts that he was abandoned by his retained counsel. In *Clark v Oliver,* 346 F Supp 1345 (ED Va, 1972) the District Court for the Eastern District of Virginia found that the lack of demand by the defendant was excusable since he was uneducated, was never made formally aware of the charges against him, and was powerless to assert his right by reason of incarceration.

From the "Reasons for Delay" just discussed it appears that defendant did not want a speedy trial. He was unconcerned about trial while he was out on bail from January to September, 1969 when he was arrested for another crime. Further, he was represented by counsel from November, 1968, up to March 26, 1970, when his attorney withdrew from the case. It is true that defendant filed a grievance against his attorney for the handling of the case and the attorney was admonished. However, the complaint was dismissed, there being insufficient or no evidence of misconduct. Defendant's letters to the State Bar Grievance Board show him to possess enough knowledge and intelligence to be aware not only of his situation, but of possible available remedies to him.

Thus defendant's failure to assert a demand for speedy trial was of his own choosing and as a

result of his own activity and must be weighed heavily against him.

## D. *Prejudice to the Defendant*

There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense.[9] Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern. Prejudice to his defense might include key witnesses being unavailable. Impairment of defense is the most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 US 514, 532.

Every incarceration results in a degree of prejudice to the person. In *Barker,* the Court found no undue prejudice in ten-months' incarceration. However, by reference to our Legislative six-month standard, defendant's seven months here borders on being too long even considering the reason for this incarceration arises from another rather than this arrest.

The question whether defendant's defense was prejudiced is relevant. The eyewitness identified defendant at trial from an observation made 15 months earlier. The witness testified that defendant now had a mustache and longer hair than when she observed him on January 4, 1969. Defendant claims that as in *Clark v Oliver, supra,* the Court should find prejudice from the fact that the defendant was convicted largely on personal identification, which grows less reliable over a long period of time.

---

[9] In *Barker* the Court stated:

"There are cases in which delay appreciably harms the defendant's ability to defend himself. Moreover, a defendant confined to jail prior to trial is obviously disadvantaged by delay as is a defendant released on bail but unable to lead a normal life because of community suspicion and his own anxiety." 407 US 526, 527.

In *Clark,* however, the real prejudice the court was concerned with was that defendant had been deprived of a defense witness whom he claimed was the perpetrator of the offense. At trial here in response to the prosecutor's question, the witness unequivocally identified defendant as the perpetrator of the armed robbery.

Defendant relying on *Den Uyl* argues that prejudice is conclusively presumed from any delay. This is untenable. In *Den Uyl* we said that prejudice would be presumed after 18 months. Prior to that time the burden is on the accused to show he was actually harmed. After 18 months, the burden shifts to the prosecution to show there was no injury. Here the delay was 15 months for no small part of which defendant must share a major responsibility and defendant failed to make a sufficient showing of prejudice.

Therefore, the degree of prejudice to the defendant was not so great as to be considered as a strong factor in his favor.

## IV. *CONCLUSION*

Justice Powell stated in *Barker:*

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."* 407 US 533. (Emphasis added.)

In balance we hold that defendant was not denied his right to a speedy trial. The delay was certainly long enough to raise the question of fair

trial. However, the defendant was himself a substantial reason for the delay. Defendant's assertion of his right to a speedy trial came so late as to be devoid of any sincerity or conviction. Finally, while incarceration is always prejudicial to defendant's person, and delay could have affected the ability of the identifying witness, the prejudice here is not great enough to swing the balance in his favor. The serious prejudice here was to the public. The delay in prosecuting the robbery armed charge allowed defendant to commit another crime against the people for which he was convicted. Finding no denial of the right we need not consider the appropriate remedy.[10]

---

[10] A corollary question for this Court to consider if the denial of the right is ever found, is whether dismissal is the proper remedy or should a less drastic relief be granted? The Legislature requires dismissal of a state prisoner after 180 days without trial (MCLA 780.131, 780.133; MSA 28.969[3]). The Legislature has also said that if a person in prison makes a demand for trial, he was to be tried within 6 months or released upon his own recognizance (MCLA 767.38). This Court in *Den Uyl* directed the magistrate to conclude the examination within 60 days or dismiss the charges and discharge the defendants. ABA Standards and Rules § 4.1 also recommend absolute discharge.

The Federal Court for the Eastern District of Virginia has recently held that when the right to a speedy trial was denied under *Barker*, the proper relief was voiding the conviction. *Clark v Oliver*, 346 F Supp 1345 (ED Va, 1972) There is support for the *Clark* approach in *Barker*. Justice Powell stated:

"The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. * * * Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy." 407 US 514, 522.

However, in *United States v Strunk,* 467 F2d 969 (CA 7, 1972) the Seventh Circuit interpreting *Barker* stated:

"Here no question is raised about the sufficiency of evidence showing defendant's guilt, and, * * * he makes no claim of having been prejudiced in presenting his defense. In these circumstances, the vacation of the sentence and a dismissal of the indictment would seem inappropriate. Rather, we think the proper remedy is to remand the case to the district court with direction * * * to credit the defendant with the period of time elapsing between the return of the indictment and the date of the arraignment."

See 64 Yale L J 1208 (1955). See also Justice Brennan concurring in

The Court of Appeals is affirmed.

T. M. KAVANAGH, C. J., and ADAMS, T. E. BREN-
NAN, T. G. KAVANAGH, and SWAINSON, JJ., concur-
red with WILLIAMS, J.

BLACK, J., did not sit in this case.

*Dickey* to the effect that discharge is justified only in rare situations.
398 US 30, 52.