# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

OCTAVIAN FLY,

Defendant-Appellant.

UNPUBLISHED
November 3, 2016

No. 329151
Ingham Circuit Court
LC No. 14-001236-FH

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Defendant, Octavian Fly, appeals by right from his convictions, following a bench trial, of delivery or manufacture of marijuana, MCL 333.7401(2)(d)(*iii*), felon in possession of a firearm (felon in possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Fly as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of 24 months to 96 months' imprisonment for his marijuana conviction and 34 months to 120 months' imprisonment for his felon in possession conviction, and a consecutive term of 24 months' imprisonment for his felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

According to Michael Tymkew, he visited the home of Melissa Cole to speak with one of her children. While speaking with the children outside the home, Fly came onto the porch with a backpack and began yelling. One of the children told Tymkew that there had been a physical altercation between Fly and Cole, and Tymkew called 911.

According to Lansing Police Department Officer Robert Forbis, when he arrived at the home, Fly was seated on the front porch steps. When Fly saw Officer Forbis, he quickly stood up, grabbed a green backpack, and ran into the house. Cole testified that Fly came back into the home, put some marijuana on a TV stand, and threw the green backpack into a bedroom. Based on a conversation with the children, Officer Forbis believed that Fly was a narcotics dealer, and Officer Forbis asked Cole for consent to search the house. He stated that before Cole signed the consent form, he asked her if she resided in the house, and she replied that she did. During the subsequent search, officers recovered two jars containing marijuana from the TV stand, a gun from inside the green backpack, and two small scales. The trial court found Fly guilty of the offenses previously stated.

-1-

## II. WAIVER OF RIGHT TO COUNSEL

Fly contends that he is entitled to a new trial because the trial court failed to obtain a knowing, intelligent, and voluntary waiver of his right to counsel. We disagree.

We review de novo whether a defendant has waived his Sixth Amendment right to be represented by counsel and review for clear error the trial court's factual findings regarding a knowing and intelligent waiver. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). We must indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel. *Id*. We review an unpreserved error regarding whether the trial court failed to reaffirm a defendant's waiver of the right to counsel under MCR 6.005(E) for plain error affecting the defendant's substantial rights. *People v Lane*, 453 Mich 132, 140; 551 NW2d 382 (1996).

The trial court should engage in "a methodical assessment of the wisdom of self-representation by the defendant" before determining that the defendant's waiver is knowing, intelligent, and voluntary. *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (quotation marks and citation omitted). A defendant's waiver is effective when the trial court fully apprises the defendant of the risks of self-representation, and the defendant knowingly and voluntarily accepts them. *Williams*, 470 Mich at 645. MCR 6.005(D) requires the trial court to advise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence required by law, and the risks of self-representation. The trial court must substantially comply with these requirements for the defendant to validly waive the right to counsel. *People v Willing*, 267 Mich App 208, 220; 704 NW2d 472 (2005).

In this case, before trial, Fly stated that he wanted to represent himself and use his court-appointed attorney as an advisory attorney. The trial court confirmed that Fly wanted to represent himself and cautioned him against doing so. It informed him of the charges and maximum sentences for his offense, as well as the possible sentence-enhancements for his third-offense habitual offender status. It also explained that the prosecutor was a trained lawyer and "generally it's not a very good idea for a person who is not a lawyer, facing serious charges, to go up against someone who is an experienced lawyer and very knowledgeable on the rules and the law." Finally, the trial court asked Fly if he had spoken with his lawyer about his desire to represent himself. Fly responded, "I did, but like when I talked to him about it . . . he just pretty much ignored me." After again asking Fly if he wished to represent himself, Fly confirmed that he wanted to represent himself.

We conclude that the trial court substantially complied with its obligations by fully apprising Fly of the risks of self-representation and ascertaining that he voluntarily accepted them. We thus conclude that Fly's waiver of his right to counsel was knowing, intelligent, and voluntary.

Fly also contends that the trial court's failure to remind him of his right to counsel at each subsequent proceeding rendered his waiver constitutionally ineffective. The trial court should advise the defendant at each subsequent proceeding of his or her right to an attorney and "reaffirm that a lawyer's assistance is not wanted . . . ." MCR 6.005(E)(1). However, this is not a constitutional requirement for the knowing, intelligent, and voluntary waiver of the right to

counsel. *Lane*, 453 Mich at 139-140. Accordingly, Fly's argument that the trial court's failure to remind Fly of his right to counsel under MCR 6.005(E)(1) affected the constitutionality of his waiver is without merit.

### III. LEGALITY OF THE SEARCH AND SEIZURE

In his pro-se brief filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4,[1] Fly contends that the search of Cole's residence was illegal because the police did not obtain proof that Cole owned the residence. We disagree.

The Fourth Amendment of the United States Constitution guarantees every person's right to be free from unreasonable searches and seizures. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). See US Const, Am IV; Const 1963, art 1, § 11. We review de novo whether police conduct violated the Fourth Amendment. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009).

Both the United States and Michigan constitutions "guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). See US Const, Am IV; Const 1963, art 1, § 11. To comply with this requirement, police officers generally must have a warrant to conduct a search. See *Kazmierczak*, 461 Mich at 417. If police officers obtain evidence while violating the Fourth Amendment, the evidence is generally inadmissible in criminal proceedings. *Id*. at 418. "In order to show that a search was legal, the police must show either that they had a warrant or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Eaton,* 241 Mich App 459, 461; 617 NW2d 363 (2000).

The consent exception to the search warrant requirement allows officers to conduct a search "when consent is unequivocal, specific, and freely and intelligently given." *People v Galloway*, 259 Mich App 634; 675 NW2d 883 (2003). The consent must come from the person whose property the officer seeks to search or from a third party with authority over the property. *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008). The police officer's belief in the validity of the consent must be objectively reasonable. *Id*.

In this case, Officer Forbis testified that Cole stated that she resided in the house and that it was her home. Officer Forbis was called to the home by Tymkew, who was there to speak with Cole's children. It is undisputed that Cole did not present any documentary evidence that she lived at the home. However, under the circumstances, we conclude that Officer Forbis's belief in the validity of Cole's consent was objectively reasonable.

---

[1] It is extremely difficult to discern the legal basis of Fly's arguments in his Standard 4 brief. This Court will address those arguments for which a legal basis is apparent. However, to the extent that Fly may have raised additional arguments, we conclude that those arguments are abandoned for failure to support them. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Fly also contends that police lacked a legal basis to seize the firearm and marijuana. We disagree.

"[A] warrantless seizure by police of an item that comes within plain view during their lawful search of a private area may be reasonable under the Fourth Amendment," including when the intrusion that brought the police officer into the view of the evidence is supported by a warrant exception. *Arizona v Hicks*, 480 US 321, 323; 107 S Ct 1149; 94 L Ed 2d 347 (1987). The plain-view exception allows a police officer to seize an item in his or her plain view if he or she views the item from a lawful position and the item's incriminating character is immediately apparent. *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). An item's incriminating character is immediately apparent if probable cause would exist to seize the item without conducting a search. *Id*. at 102-103. Probable cause exists "when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed." *People v Chapo*, 283 Mich App 360, 367; 770 NW2d 68 (2009).

In this case, the marijuana was sitting in two Mason jars on a TV stand in plain view, with one clear jar containing a large bag and the second clear jar containing smaller bags. Marijuana is a controlled substance, and MCL 333.7401(2)(d)(*iii*) criminalizes the manufacturing or intent to deliver marijuana. Therefore, once the officer viewed the marijuana in plain sight, there was a reasonable belief that an offense had been committed. A gun was also found in the home. Delivery or manufacture of marijuana is a felony, MCL 333.7401(2)(d)(*iii*), and it is a felony to possess a firearm while committing or attempting to commit a felony, MCL 750.227b. Under the circumstances, we conclude that the police had probable cause to seize the firearm.

## IV. ADMISSION OF IMPEACHMENT EVIDENCE

In his pro-se brief, Fly contends that the trial court improperly prevented him from introducing into evidence police reports that contained inconsistent statements by the witnesses. We disagree.

We review for an abuse of discretion the trial court's decision to admit or exclude evidence. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Duenaz*, 306 Mich App 85, 98; 854 NW2d 531 (2014).

In this case, Fly sought to admit police reports that he used to impeach the witnesses with inconsistent statements. The trial court properly allowed Fly to impeach the witnesses about their prior statements with these documents without admitting the documents themselves into evidence. See MRE 613. However, MRE 803(8) provides that police reports are inadmissible hearsay. The trial court properly declined to admit the reports as evidence. We have reviewed the trial court's impeachment procedures and conclude that those procedures and rulings did not constitute an abuse of discretion.

To the extent that Fly challenges the credibility of the witnesses' testimonies, we reject his challenge. The credibility of the witnesses is for the trier of fact to determine, and this Court

does not resolve credibility issues on appeal. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

## V. DOUBLE JEOPARDY

In his pro-se brief, Fly contends that his convictions of both felony-firearm and felon-in-possession violated the constitutional prohibition against double jeopardy. Well-settled law is contrary to Fly's argument, see *People v Dillard*, 246 Mich App 163, 171; 631 NW2d 755 (2001), and we conclude his position is meritless.

## VI. RIGHT OF CONFRONTATION

In his pro-se brief, Fly contends that the trial court deprived him of his right to confrontation when the prosecution failed to call three witnesses at trial. We disagree.

The Sixth Amendment of the United States Constitution and Article I, § 20 of Michigan's Constitution, give an accused the right to be confronted with the witnesses against him. See *Pointer v Texas*, 380 US 400, 406; 85 S Ct 1065; 13 L Ed 2d 923 (1965); *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). However, "[m]erely framing an issue as constitutional does not make it so." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). An issue involving the exclusion of evidence is generally nonconstitutional error. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

In this case, the trial court allowed Fly to call and examine Cole when the prosecution declined to call her as a witness. Regarding Cole's children, the trial court ruled that Fly could not call them. Fly does not indicate what evidence the children would have offered. The exclusion of evidence is grounds for reversal only if it affirmatively appears that it is "more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 495-496. Because there is no indication that the children would have offered testimony that would have affected the outcome of Fly's case, Fly has failed to show that any prejudice resulted from this alleged error.

## VII. RIGHT TO SPEEDY TRIAL

Finally, in his pro-se brief, Fly contends that the prosecution violated his right to a speedy trial. Again, we disagree.

The United States and Michigan Constitutions, as well as statutes and court rules, grant criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). In determining whether a defendant has been denied a speedy trial, a court must consider (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant from the delay. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). The defendant must prove actual prejudice when the delay is less than 18 months. *People v Collins*, 388 Mich 680, 695; 202 NW2d 769 (1972). But "[w]hen the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *Rivera*, 301 Mich App at 193.

In this case, Fly was arrested on October 13, 2014, arraigned on November 26, 2014, and his bench trial began on April 9, 2015. Because the time between Fly's arrest and trial was less than 18 months, there is no presumptive prejudice. Fly has also failed to show that any actual prejudice resulted from any delay. We thus reject Fly's claim.

We affirm.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher