*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DOMINIQUE MARQUISE SINGLETON,

Defendant-Appellant.

UNPUBLISHED
October 13, 2025
10:19 AM

No. 375998
Genesee Circuit Court
LC No. 16-040303-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant was convicted of second-degree murder and other crimes, and in a prior appeal this Court rejected some of his challenges but remanded to the trial court to determine whether he was deprived of his constitutional right to a speedy trial. *People v Singleton*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2020 (Docket No. 344960). Defendant now appeals the trial court's order declining to dismiss the case based on its determination that defendant was not prejudiced by the delay. We affirm.

## I. BACKGROUND

The facts relative to defendant's conviction are contained in our earlier opinion. On remand, the parties agreed that the critical issue was whether the delay caused defendant any prejudice. The trial court issued an opinion discussing the timeframes and delays, who contributed to those delays, and whether it resulted in prejudice to defendant.

According to the record, defendant was arrested in late May 2016, the day after the victim was shot. Despite defendant's repeated invocation of his right to a speedy trial, the trial court adjourned his trial several times. One adjournment appears to have been because defendant filed a discovery motion on the day trial had been scheduled to start, and another appears to have been by mutual agreement so that certain statements made to the police could be transcribed. Another adjournment was caused because various reports relied on by the prosecution were unavailable, while another occurred because the trial court was concerned that holding a jury trial close to a holiday would rush the jury, or for unknown reasons. Defendant's trial began in June 2018. The trial court found that none of the delays were in bad faith, and most were attributable to the

prosecution. In the end, the court held that the 24-month delay did not prejudice defendant, and thus the delays did not warrant dismissal of the case.

## II. STANDARD OF REVIEW AND PRINCIPLES OF LAW

"Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law." *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365590); slip op at 3 (quotation marks and citation omitted). This Court reviews the trial court's legal determinations de novo and the trial court's factual findings for clear error. *Id*. at ___; slip op at 3. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

Criminal defendants are guaranteed the right to a speedy trial under both the United States and Michigan Constitutions, and violation of that right entitles the defendant to dismissal of the charge. *Jones*, ___ Mich App at ___; slip op at 3. The time for determining whether a defendant's right to a speedy trial has been violated "runs from the date of the defendant's arrest until the time that trial commences." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). There is no "fixed number of days" that will establish a violation of the right to a speedy trial. *Jones*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). "Rather, when evaluating a speedy-trial claim, the reviewing court is required to balance four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3 (quotation marks and citation omitted). "These factors are often known as the *Barker* factors, as they were first announced by the United States Supreme Court in *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972)." *Smith*, ___ Mich App at ___ n 1; slip op at 3 n 1.

## III. ANALYSIS

The first *Barker* factor is undisputed. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Smith*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). Defendant was arrested in late May 2016, and his trial began in early June 2018, approximately 24 months later. As we recognized in our prior opinion, "such a lengthy delay was presumptively prejudicial" to defendant, and it is "the prosecution's burden to rebut the presumption of prejudice." *Singleton*, unpub op at 4. The third *Barker* factor is also undisputed, as defendant asserted his right to a speedy trial throughout the proceedings, and nothing suggests that he did so insincerely. Cf. *People v Holtzer*, 255 Mich App 478, 494-495; 660 NW2d 405 (2003). Both factors weigh in defendant's favor, as the trial court found.

Under the second *Barker* factor, defendant asserts that all of the pretrial delays are attributable to the prosecution. The trial court did not clearly err in finding some delays attributable to defendant, as it accurately found that one period of delay was caused because defendant filed a last-moment motion for additional discovery on one of the days trial was scheduled to begin. *People v Gilmore*, 222 Mich App 442, 461; 564 NW2d 158 (1997). Another delay was not explained by anything in the record but seemingly was by mutual agreement, and the trial court did not clearly err by declining to attribute that delay to either party. The *entirety* of the pretrial

-2-

delay was therefore not attributable to the prosecution. But, as the trial court found, most of the delay was attributable to the prosecution, although there was no evidence of bad faith. Indeed, defendant has never contended that any delay was because of bad faith, and at one point below, he even conceded that the prosecution was acting diligently. Furthermore, one of the delays was outside the control of the parties or the trial court because there was a judicial vacancy and no judge had been appointed. The trial court did not clearly err by weighing this factor only modestly in defendant's favor.

The fourth *Barker* factor, and the most important factor, is whether defendant was prejudiced by the delay. We hold that the trial court did not clearly err by finding that defendant was not prejudiced by the delay.

"There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). Pretrial incarceration inherently prejudices the person, but it cannot establish a speedy-trial violation by itself. *Smith*, ___ Mich App at ___; slip op at 6. Prejudice to the defense is the most serious concern "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006) (quotation marks and citations omitted). Such prejudice may include the death or disappearance of a witness or a witness's inability to recall past events accurately. *Barker*, 407 US at 532. "Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." *Id.* at 533. A witness's unavailability must, however, be because of the delay, and that concern may be irrelevant if there were no eyewitnesses. *People v Wickham*, 200 Mich App 106, 112-113 & 113 n 1; 503 NW2d 701 (1993).

After an 18-month delay, "an affirmative demonstration of prejudice" is unnecessary "to prove a denial of the constitutional right to a speedy trial." *Moore v Arizona*, 414 US 25, 26; 94 S Ct 188; 38 L Ed 2d 183 (1973). However, even when prejudice is presumed, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria," although "its importance increases with the length of delay." *Doggett v United States*, 505 US 647, 655-656; 112 S Ct 2686; 120 L Ed 2d 520 (1992). By default, the burden of proving prejudice is on defendant, *Collins*, 388 Mich at 695, although the prosecution has the burden of rebutting the presumption of prejudice.

The record affirmatively shows that defendant's person was not prejudiced by the delay. When the victim was shot, defendant was on parole for other crimes, and he was incarcerated for violating that parole. The trial court found that "defendant likely would have been in prison during this period anyway," and that finding is not clearly erroneous. Defendant protests that he did not receive any sentencing credit for the two years he spent awaiting trial, but that is inaccurate. Defendant was required to finish serving his prior sentences before beginning to serve his sentences in this case. *People v Allen*, 507 Mich 597, 609 n 19; 968 NW2d 532 (2021). The only "dead time" to defendant would have been any delay between his actual parole violation and his arrest, *id.* at 612 n 25, which, at the most, resulted in one day of "dead time," and the time he spent incarcerated was time he otherwise would have spent serving his prior sentences. The trial court did not clearly err by finding that the record overcomes any presumption of prejudice to defendant's person.

We also conclude that in light of the findings by the trial court – findings that were not clearly erroneous – the trial court correctly concluded that defendant's defense was not prejudiced. The practical issue of fact at trial was the identity of the shooter. The only person who could identify the shooter was Holcolm, and his identification of defendant was supported by objective circumstantial evidence, including a cell phone, a gun case, and defendant's fingerprints. This type of evidence was not the kind of evidence that would decay. None of the eyewitnesses to the shooting could see the shooter's face. One witness was unavailable at trial,[1] but we are not left to speculate about her probable testimony because the parties agreed to allow a police officer to testify about a statement that witness gave to police. Consistent with the other eyewitnesses, the absent witness also could not see the shooter and did not know who the shooter was. That testimony would neither have implicated nor exonerated defendant. Although defendant believes that the missing witness's statement was inconsistent with Holcolm's testimony because she reported seeing Holcolm hanging around the car wash and at a nearby party store, Holcolm testified that he was friends with the owner of the car wash and, in fact, went to that party store after the shooting and told defendant to leave. The trial court did not clearly err by finding that defendant was not prejudiced by the witness's absence.[2]

The record shows that the nature of the case against defendant was inherently resistant to becoming more prejudicial over time, and the only potential prejudice was the absence of a witness who could not have helped the defense. The record thus overcomes the presumption of prejudice, and defendant has not carried his ultimate burden of establishing prejudice. The trial court did not clearly err by finding that, notwithstanding the two-year delay between defendant's arrest and trial, he was not prejudiced, and dismissal was not warranted.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[1] The witness neither died nor disappeared, cf. *Barker*, 407 US at 532, but rather "had some type of mental crisis," which was unrelated to the trial and that the parties decided not to exacerbate. The record is silent as to how long the witness had been suffering from that crisis.

[2] We reject the prosecution's contention that defendant waived any claim of prejudice from the witness's absence when defendant agreed to allow the police officer to testify about the witness's statement. Defendant's apparent effort to mitigate the harm from the witness's crisis by making the most of an unfortunate situation was not a relinquishment of his rights.