# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES ORDELL KEYS III,

      Defendant-Appellant.

UNPUBLISHED
September 19, 2017

No. 331489
Oakland Circuit Court
LC No. 2003-193893-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES ORDELL KEYS III,

      Defendant-Appellant.

No. 331490
Oakland Circuit Court
LC No. 2004-198075-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES ORDELL KEYS III,

      Defendant-Appellant.

No. 331493
Oakland Circuit Court
LC No. 2004-198098-FH

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

These consolidated appeals come before this Court pursuant to an order of the Michigan Supreme Court remanding all three cases for consideration as on leave granted. 500 Mich 878; 886 NW2d 439 (2016). Defendant pleaded guilty to violations of probation with respect to all three appeals. The trial court revoked defendant's probation and sentenced him in all three cases

-1-

to 4 to 20 years' imprisonment for delivery or manufacture of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*), in Docket No. 331489 to two to five years' imprisonment for third-degree fleeing and eluding, MCL 750.479a(3), two to four years' imprisonment for malicious destruction of police property, MCL 750.377b, and in Docket No. 331493 to two to four years' imprisonment for delivery or manufacture of marijuana, MCL 333.7401(2)(d)(*iii*), with all sentences to be served concurrently. We affirm.

## I. PROCEDURAL HISTORY

In Docket No. 331489, defendant pleaded guilty on September 8, 2004 to delivery or manufacture of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*); third-degree fleeing and eluding, MCL 750.479a(3); malicious destruction of police property, MCL 750.377b; possession of marijuana, MCL 333.7403(2)(d); and operating a vehicle without a license, MCL 257.904. In Docket No. 331490, defendant pleaded guilty to delivery of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*); and possession of marijuana, MCL 333.7403(2)(d). In Docket No. 331493, defendant pleaded guilty to delivery or manufacture of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*); delivery of marijuana, MCL 333.7401(2)(d)(*iii*); and driving while license suspended – second or subsequent offense, MCL 257.904(3)(b). On September 22, 2004, defendant was sentenced to concurrent terms of 273 days in jail for each of the offenses (other than the operating a vehicle without a license for which defendant was sentenced to a concurrent 90-day term in jail), and to two years' probation. Probation orders were entered on October 7, 2004. As a condition of probation, defendant was to refrain from violating any criminal law, report to his probation officer monthly (or as often as the probation officer directed), and make monthly payments towards restitution, costs, and fees.

On September 19, 2005, defendant's probation officer filed a Report of Nonpayment of Restitution indicating that defendant had failed to pay an arrearage of $832 in restitution. The Report further stated:

> The defendant has been unemployed since his release from treatment. He has made no payments toward costs and is currently being violated [sic] for new criminal behavior and non payment.

On October 14, 2005, an appearance notice was filed in the trial court directing defendant to appear in court on October 26, 2005 for a violation of probation arraignment. The hearing was adjourned and bench warrants were subsequently entered on April 3, 2006 indicating that defendant had failed to appear as ordered for a violation of probation hearing on November 9, 2005.

Defendant was apprehended in Wayne County in November of 2014 on unrelated criminal charges. Ultimately, he pleaded guilty to probation violations, acknowledging that he had failed to report and had been convicted of new criminal activity, and was sentenced. Subsequently, he brought a motion seeking to correct what he characterized as an invalid sentence, which was denied. These consolidated appeals followed.

## II. TRIAL COURT'S JURISDICTION

Defendant first claims that the trial court lacked jurisdiction to revoke his probation, asserting that probation revocation proceedings did not commence before defendant's term of probation expired. We disagree.

MCL 771.4 provides, in pertinent part, as follows:

> It is the intent of the legislature that the granting of probation is a matter of grace conferring no vested right to its continuance. *If during the probation period the sentencing court determines that the probationer is likely again to engage in an offensive or criminal course of conduct or that the public good requires revocation of probation, the court may revoke probation. All probation orders are revocable in any manner the court that imposed probation considers applicable either for a violation or attempted violation of a probation condition or for any other type of antisocial conduct or action on the probationer's part for which the court determines that revocation is proper in the public interest.* [Emphasis supplied.]

As this Court observed in *People v Glenn-Powers*, 296 Mich App 494, 502; 823 NW2d 127 (2012), citing *People v Johnson*, 210 Mich App 630, 634; 534 NW2d 255 (1995): "Probation is a matter of legislative grace. . . . Because it is a matter of grace, a defendant has no vested right to its continuance and the probation order remains at all times revocable and amendable." (Footnotes omitted.) This Court summarized in *People v Ritter*, 186 Mich App 701, 705-706; 464 NW2d 919 (1991):

> Revocation of probation is not a part of a criminal prosecution. It deprives the defendant of only conditional liberty which is properly dependent on observance of the terms of the probation order, rather than the absolute liberty to which every citizen is entitled. The defendant is a probationer only because he has been convicted of a crime. He is not entitled to the full range of due process rights associated with a criminal trial. Due process requires only that the revocation proceedings be conducted in a fundamentally fair manner. [Citations omitted.]

In *Ritter*, the defendant was sentenced to a three-year term of probation on August 17, 1982. He pleaded guilty on July 31, 1985 to a violation of that probation and it was extended for an additional two years. On January 30, 1987, the court issued a petition and bench warrant for the defendant's arrest based on allegations that he had violated the terms of his probation by failing to report to his probation officer and by failing to pay costs, attorney fees, and restitution. He subsequently left the state and was convicted of a crime in South Carolina. An amended petition and bench warrant were filed on October 26, 1988, reciting the original allegations as well as that he had been convicted of a felony in another state. The defendant returned to Michigan and was found guilty on December 6, 1988 of violating his probation. On January 6, 1989, the court sentenced him to prison for the underlying conviction. *Id.* at 704-705. On appeal, the defendant claimed that the sentencing court lacked jurisdiction to revoke his probation and impose a sentence on the underlying felony conviction since it lost jurisdiction

over him when his term of probation expired on August 13, 1987. *Id.* at 705. This Court disagreed:

> The original petition and bench warrant against defendant alleging violation of the terms of his probation were issued by the sentencing court on January 30, 1987, more than seven months before defendant's probation expired. *Michigan courts have traditionally held that the sentencing court retains jurisdiction to revoke a defendant's probation if probation revocation proceedings are commenced within the probation period and are pending when it expires.* [*Ritter*, 186 Mich App at 706 (emphasis added; citations omitted).]

The defendant further claimed that MCL 771.4 did not allow the trial court to revoke probation beyond the statutory five-year period set forth in MCL 771.2(1). *Ritter*, 186 Mich App at 706-707. This Court again disagreed and observed:

> If adopted, defendant's interpretation of [MCL 771.4][1] can only result in the absurd consequence that any defendant who violates the terms of his probation may do so with impunity so long as he manages to evade apprehension until the maximum statutory period of probation [set forth in MCL 771.2] expires. We cannot conceive that the Legislature intended such a result and will not construe MCL 771.4 to require it. We must construe the statute sensibly in order to avoid absurd or unjust results. . . .

> Rather, we adopt a construction of the statute which best harmonizes the overall context of the probation statutes and the end sought to be achieved. . . . A convicted defendant has no vested right in the continuance of his probation if he violates its conditions. . . . The probation statutes confer upon the sentencing court a broad range of discretionary power in handling all aspects of the probationary process. Defendant presents no persuasive reason for limiting the court's discretion in the area of probation revocation, nor do we discern such a reason. Therefore, we conclude that MCL 771.4 must be construed to authorize the sentencing court to revoke a defendant's probation, limited only by the requirement that the decision to revoke be based on violations which occur during the probationary period.

> Our conclusion is reinforced by MCR 6.445(A) which authorizes the sentencing court to issue a summons to appear or an arrest warrant upon "finding probable cause to believe that a probationer has violated a condition of probation." Thus, we may logically construe the statutory phrase [in the predecessor version of MCL 771.4] "[i]f during the period of probation it appears to the sentencing court's satisfaction" to require only that during the probation

---

[1] While *Ritter* involved a predecessor version of MCL 771.4, any revisions to the statutory language are not dispositive in our analysis.

-4-

period the court find that probable cause exists to believe that the defendant has violated his probation in order to justify issuance of a petition to revoke probation and a warrant for the defendant's arrest. As discussed above, a petition was filed against defendant on January 30, 1987, for violations of the probation order which occurred in November and December 1986. Therefore, we conclude that the trial court had jurisdiction to revoke defendant's probation in October 1988 despite the fact that his probation expired on August 13, 1987. [*Ritter*, 186 Mich App at 707-708 (citations and footnote omitted).]

This Court's decision in *Ritter* was consistent with *People v Hodges*, 231 Mich 656; 204 NW 801 (1925), where a few weeks before the defendant's term of probation was to expire, the sheriff filed an application to have it revoked because the defendant had violated his probation by being convicted of a criminal offense. The revocation proceeding was adjourned to a date just past the expiration date of the defendant's probation. After the defendant was sentenced on the original charge, he moved to set aside the sentence, arguing that it was imposed after the term of probation had expired. *Id*. at 657-658. Responding to the defendant's claim that the revocation order was not actually entered until after the expiration of the original term of probation, our Supreme Court stated:

If no action had been taken during the period of probation a more serious question would be presented. But here the petition to revoke the probation was filed within the period of probation and we think it must be held that the filing of this petition within the period of probation gave the court jurisdiction which was not lost by a reasonable delay incident to a hearing upon it. Had objection been made to an adjournment the court could then have passed sentence and no question could have been raised to its validity. . . . The fact that a witness was ill, or time was given defendant to prepare for a hearing, or the work of the court necessitated a delay, or for other good reason an adjournment was necessary, did not oust the court of jurisdiction to act upon a petition seasonably filed. [*Hodges*, 231 Mich at 660-661 (citation omitted).]

In *People v Wakefield*, 46 Mich App 97, 98; 207 NW2d 461 (1973), the defendant was placed on a two-year term of probation for a misdemeanor offense for which the possible probationary period could not exceed two years. A notice of probation violation was filed three days after the two-year period expired and a hearing was promptly held, but nothing else happened until approximately six years later after the defendant was arraigned on a warrant. *Id*. at 98-99. Despite the defendant's protests that he had paid the costs owed and that the delay in proceeding against him had violated his rights, the court found that he had violated his probation and sentenced him to prison. *Id*. at 99. Noting that proceedings against him for violating probation had not been filed until three days after the probationary period had ended, this Court reversed the defendant's sentence and declared:

Absent a showing that revocation proceedings were pending at the end of the two-year period of probation, we are constrained to rule that the trial court lost

jurisdiction of the defendant and could not thereafter sentence him to prison. [*Id*. at 100.]

In *People v Valentin*, 220 Mich App 401; 559 NW2d 396 (1996), aff'd 457 Mich 1 (1998), the juvenile defendant was sentenced to probation. He was later convicted of a crime and his probation was revoked. This Court, citing *Ritter*, determined that the failure to hold a commitment review hearing - a failure that violated statutory and court rule requirements - did not deprive the trial court of jurisdiction to revoke the defendant's probation where the probation revocation proceedings commenced before the defendant's term of probation expired. *Id*. at 407-408.

Additional caselaw subsequent to *Ritter* supports that decision. In *People v Glass*, 288 Mich App 399, 400; 794 NW2d 49 (2010), the defendant pleaded guilty in May of 2004 and was sentenced in July of 2004 to a two-year term of probation. In February of 2008, he was found guilty of violating the terms of his probation and sentenced to prison. *Id*. The trial court claimed it had jurisdiction to revoke the defendant's probation based on *People v Marks*, 340 Mich 495; 65 NW2d 698 (1954), where our Supreme Court had determined that a trial court possessed authority pursuant to the predecessor to MCL 771.2 to modify a term of probation any time during the statutory five-year period that could have been imposed pursuant to the statute. *Glass*, 288 Mich App at 401-402. However, this Court held that the *Marks* decision was not applicable because the trial court had not, as in *Marks*, *altered* or *amended* the defendant's term of probation, but instead had revoked the probation, and caselaw had declared "that a probation revocation must occur, or must at least have been commenced, during the probation period." *Id*. at 403. This Court noted that MCL 771.4 provides that "[i]f *during the probation period* the sentencing court determines that the probationer is likely again to engage in an offensive or criminal course of conduct or that the public good requires revocation of probation, the court may revoke probation." *Glass*, 288 Mich App at 403-404, citing MCL 771.4. The *Glass* Court also considered the application of *Hodges*, *Ritter*, *Wakefield*, and *Valentin*, and concluded:

> The authorities we have examined . . . lead us to the inexorable conclusion in this case that the circuit court lacked jurisdiction to revoke defendant's probation and impose a prison sentence. The circuit court sentenced defendant to a two-year probation period that expired on June 23, 2006. The court did not sign the bench warrant for defendant's arrest for violating the conditions of his probation until February 20, 2007, at the earliest, and the court clerk did not file the warrant until March 2, 2007. Because defendant's probation period had already expired well before any probation revocation proceedings had commenced, the circuit court did not possess jurisdiction to revoke defendant's probation and sentence him to imprisonment. [*Glass*, 288 Mich App at 408.]

Thus, the above authority illustrates that the critical issue is whether probation revocation proceedings have commenced before a defendant's term of probation has concluded. In this case, defendant's term of probation commenced on September 22, 2004. According to the probation agent's statement in the Case Report,

[o]n July 22, 2005 Agent Tracy Budnick authored a Violation of Probation Report charging the defendant with 1) Failure to remain crime free, 2) Failure to make court ordered payments, and 3) Failure to maintain full-time employment.

On September 19, 2005, defendant's probation officer filed a Report of Nonpayment of Restitution indicating that defendant had failed to pay an arrearage of $832 in restitution as ordered. The document also noted that new criminal charges had been filed against defendant. An appearance notice was filed on October 14, 2005, directing defendant to appear in court on October 26, 2005. Defendant appeared on October 26, 2005, counsel was appointed to represent him, and the matter was adjourned until November 9, 2005, for discovery and further investigation. On April 3, 2006, bench warrants were filed in all three cases asserting that "defendant failed to appear as ordered in court for VOP HEARING on November 9, 2005 before this court." All these proceedings occurred well before defendant's two-year term of probation expired on September 22, 2006. Accordingly, consistent with *Hodges*, *Ritter*, and *Valentin*, defendant's decision not to attend the probation violation hearing on November 9, 2005 did not serve to divest the trial court of jurisdiction over defendant for the purpose of revoking his probation.

Defendant acknowledges these facts, but claims that the trial court did not "issue a warrant during the probationary period." Defendant acknowledges that the records disclose that the trial court issued a warrant for failure to appear at a show cause hearing, but he claims, without supporting authority, that this warrant was not a warrant for a probation violation or an order extending the term of probation, and therefore did not either commence the probation revocation proceedings or extend the term of probation. However, defendant's statement that "[t]he trial court did not issue a warrant during the probationary period" is plainly false. The trial court issued a bench warrant for defendant's failure to appear, not at a "show cause" hearing, but at a *violation of probation* hearing. The lower court's register of actions indicates that the adjourned date of November 9, 2005 was for a "VOP" – a "violation of probation." Moreover, the transcript of the January 20, 2016 hearing on defendant's motion to correct an invalid sentence indicates that defendant appeared on the initial notice date of October 26, 2005, and that the matter was adjourned until November 9, 2005 for further discovery and investigation. Defendant then failed to appear on November 9, 2005. According to the court's register of actions, the court directed on November 9, 2005 that a bench warrant should issue for "VOP." The bench warrant was signed on March 31, 2006 and filed with the clerk's office on April 3, 2006. On the face of each warrant was the statement that the bench warrant had issued "for the reason that the defendant failed to appear as ordered in court for [a] VOP HEARING on November 9, 2005." All of these acts served to commence the revocation of probation proceedings well before defendant's term of probation expired. Moreover, defendant's argument, in effect, urges this Court to adopt an absurd result. As this Court reasoned in *Ritter*, 186 Mich App at 707:

If adopted, defendant's interpretation of the relevant statute can only result in the absurd consequence that any defendant who violates the terms of his probation may do so with impunity so long as he manages to evade apprehension until the maximum statutory period of probation expires. We cannot conceive that the Legislature intended such a result . . . .

Defendant also claims that the documents that were sent to him by the probation department did not initiate the probation revocation proceedings because the summons and the warrant did not comply with the requirements of the court rules. Thus, in defendant's view, the probation revocation proceedings were not "pending" when he was eventually arrested on other criminal charges and when his probation was subsequently revoked. Defendant bases this argument on MCR 6.445, which provides, in pertinent part:

(A) **Issuance of Summons; Warrant**. On finding probable cause to believe that a probationer has violated a condition of probation, the court may

(1) issue a summons in accordance with MCR 6.103(B) and (C) for the probationer to appear for arraignment on the alleged violation, or

(2) issue a warrant for the arrest of the probationer.[2]

This court rule references MCR 6.103(B) and (C). MCR 6.103 provides, in pertinent part, as follows:

(B) **Form**. A summons must contain the same information as an arrest warrant, except that it should summon the accused to appear before a designated court at a stated time and place.

(C) **Service and Return of Summons**. A summons may be served by

(1) delivering a copy to the named individual; or

(2) leaving a copy with a person of suitable age and discretion at the individual's home or usual place of abode; or

(3) mailing a copy to the individual's last known address.

Service should be made promptly to give the accused adequate notice of the appearance date. The person serving the summons must make a return to the court before which the person is summoned to appear.

Additionally, MCR 6.102 provides, in pertinent part, as follows:

(C) **Contents of Warrant; Court's Subscription**. A warrant must

---

[2] This Court notes that MCR 6.445(A)(1) requires adherence to MCR 6.103, but a similar provision does not appear in MCR 6.445(A)(2) regarding the issuance of a warrant for a probationer's arrest. This suggests that a warrant does not have to comply with the requirements of MCR 6.103. Therefore, defendant's argument that the warrant was defective because it did not comply with MCR 6.445 and MCR 6.103 is not supported by the plain language of those court rules.

(1) contain the accused's name, if known, or an identifying name or description;

(2) describe the offense charged in the complaint;

(3) command a peace officer or other person authorized by law to arrest and bring the accused before a judicial officer of the judicial district in which the offense allegedly was committed or some other designated court; and

(4) be signed by the court.

Initially, we note that nothing in MCR 6.445, MCR 6.102 or MCR 6.103 indicates that any technical noncompliance will deprive the court of jurisdiction over the defendant or will prevent the court from initiating valid probation revocation proceedings against a defendant. Also, the record reflects that the summons complied with the requirements of the applicable court rules. Apparently, the probation officer's summons had the desired effect of causing defendant to appear in court on October 26, 2005. Defendant has not alleged that at the time of his appearance he challenged the sufficiency of the summons or claimed that it did not satisfy the requirements of the court rules.

Subsequently, defendant failed to appear for the adjourned violation of probation hearing on November 9, 2005. At that time a bench warrant was requested and the court subsequently issued the requested warrant in each case. The warrants recited defendant's name, they were signed by the court, and they commanded a peace officer to arrest defendant and bring him before the court. Moreover, the applicable court rules do not specify the requisite detail required and defendant has failed to provide authority that sets out the nature of the required description.

An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. [*People v Konopka (On Remand)*, 309 Mich App 345, 366; 869 NW2d 651 (2015) (citations and quotation marks omitted).]

Regardless, the detail sufficed. The bench warrants listed the underlying charges to which defendant had previously pleaded guilty and for which he had been sentenced. The warrants further commanded the police to arrest defendant for his failure to appear for a violation of probation hearing on November 9, 2005. This description was sufficient to alert defendant regarding why he was being arrested. The warrant is meant to function as an initial notice to a defendant by providing him with the basic information about the reason for his arrest; it is not meant to function as a comprehensive explanation of all the relevant information that he might eventually need to know. However, it appears that defendant was advised that the bench warrant was being issued based on defendant's (1) failure to remain crime free, (2) failure to make court-ordered payments, and (3) failure to maintain full employment. Considered together, the documents provided were sufficient to comply with the requirements of the applicable court rules.

Notably, defendant did not object to the form or sufficiency of the summons when he first appeared in court on October 26, 2005, and he failed to object to the form or sufficiency of the warrant when he appeared before the court on December 17, 2014, after having been arrested, or on February 25, 2015, before he pleaded guilty to the probation violations. This failure deprived the court of any opportunity to address or correct any defects that might have existed. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Because defendant failed to object before pleading guilty, and because he has failed to provide any authority to support his claim that the summons or the warrant were insufficient, he has waived any claim that the summons or the warrant did not comport with the minimal requirements of the applicable court rules.

We conclude that (1) the probation officer and the trial court filed documents sufficient to commence the violation of probation proceedings, (2) those proceedings clearly commenced with the scheduled court appearances on October 26, 2005, and November 9, 2005, (3) defendant's failure to appear on November 9, 2005 resulted in the issuance of a bench warrant more than six months before defendant's term of probation expired, and (4) the trial court was therefore not deprived of jurisdiction to continue the probation revocation proceedings when defendant was eventually apprehended and brought before the court.

### III. DUE DILIGENCE IN THE EXECUTION OF THE BENCH WARRANT

Defendant also contends that the delay in executing the bench warrant constituted a waiver of the probation violation and entitles him to have his sentence vacated. He further claims that counsel was ineffective for failing to challenge the validity of the probation violation proceeding on these grounds. We disagree.

The issue, as posed by defendant, is whether the probation authorities exercised due diligence to execute the warrant where defendant was arrested nine years after the warrant issued, and then only because he was arrested on other charges. We review the trial court's determination concerning the probation authorities' exercise of due diligence in executing the bench warrant for an abuse of discretion. *cf*. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998) (recognizing that a trial court's determination regarding whether the prosecution exercised diligence and acted in good faith to produce a witness for trial is reviewed for an abuse of discretion).

Once a bench warrant has been issued, the authorities charged with its execution have a duty to exercise due diligence to execute the warrant. *People v Ortman*, 209 Mich App 251, 254; 530 NW2d 161 (1995). This Court stated in *People v Miller*, 77 Mich App 381, 384; 258 NW2d 235 (1977), in pertinent, part, as follows:

> [t]o ascertain whether the authorities exercised due diligence between the incident allegedly violating probation and the issuing of the probation violation notice, we consider it appropriate to refer to the guidelines established by our Supreme Court in the speedy trial cases. In *People v Collins*, [388 Mich 680; 202 NW2d 769 (1972)], the Court cited the factors to be taken into account in

deciding whether a defendant has been deprived of his right to a speedy trial, three of which are relevant here: length of delay, reason for delay and prejudice to the defendant.[3] [Footnote added.]

This Court cited these three factors in *Ortman*, 209 Mich App at 255, as the factors that should be analyzed "in determining whether the probation authorities exercised due diligence in executing the warrant."

The length of the delay in this case is approximately nine years. While we acknowledge the length of the delay, we are not persuaded that length alone, or length of a particular duration, is automatically indicative of a lack of due diligence.[4] Moreover, the trial court found that the reason for the delay was largely the fact that defendant absconded. The trial court expressly noted that "[d]efendant presents no evidence showing that the People could have and should have located and arrested him sooner." This remains true on appeal. Without credible evidentiary support, defendant simply asserts that the authorities were aware of his whereabouts and did not act in a timely manner to apprehend him.

In support of his assertion that the authorities knew his whereabouts, defendant has presented a Request and Writ for Garnishment form. However, there is no indication in the record that (1) defendant was actually in fact served with the form, (2) defendant resided at the address listed on the form, or (3) defendant appeared or objected to the garnishment. It is also not clear what the basis for the garnishment was and defendant has not established anything else about the garnishment other than that a writ was issued.[5] Further, the information defendant has

---

[3] A defendant may incur prejudice in two ways, to his person and to the defense. *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006).

[4] Defendant points to *People v Hanson*, 178 Mich App 507, 510; 444 NW2d 175 (1989) (opinion by MAHER, J.), where Judge MAHER opined that a twenty-seven-week time period between the issuance of a bench warrant and its execution was "unreasonable on its face." However, Judge MAHER went on to note, in an opinion with which Judge REILLY concurred in result only, that "jurisdiction to try the case is not lost if the authorities acted with due diligence in attempting to execute the warrant." *Id*. (opinion by MAHER, J.). In her concurring opinion, Judge REILLY stated that she "reject[ed] Judge MAHER'S statement that the twenty-seven-week delay was 'unreasonable on its face.'" *Id*. at 514 (opinion by REILLY, J.). In Judge REILLY'S view, the determination was best left to the factfinder on remand. *Id*. (opinion by REILLY, J.). Another case defendant cites, *People v Gunnar*, 61 Mich App 569, 570; 233 NW2d 87 (1975), is distinguishable on its facts where the Court recognized that the probation department was in possession of the defendant's address, but did not act to arrest the defendant for almost a year.

[5] With respect to defendant's reference to a pending Oakland County Friend of the Court matter, the probation department's case report includes a statement concerning an outstanding civil warrant for child neglect issued out of the Oakland County Circuit Court on October 25, 2011. However, there is nothing in the existing record to confirm that the probation authorities were aware of defendant's whereabouts as a result of the child neglect warrant.

-11-

presented in support of his contention that the authorities ought to have ascertained his location concern Oakland County: his initial arrest on charges in the three cases involved in these combined appeals, the additional offenses allegedly committed in 2005 that formed part of the basis for the probation department's 2005 action to violate defendant's probation, the tax garnishment, and a Friend of the Court action. But when defendant was finally located in 2014, it was not in Oakland County, but rather in neighboring Wayne County. Additionally, there has been no showing that defendant was known to be a resident of Wayne County before his 2014 arrest. Notably, defendant does not dispute that he failed to appear for the adjourned violation of probation hearing on November 9, 2005, and that he never subsequently contacted either the trial court or his probation officer. Consequently, this was more than sufficient to show that defendant absconded and that he was avoiding legal process. From all that appears in the present record, defendant was "living off the grid." Defendant apparently changed his residence to a different, undisclosed location in a neighboring county and managed to successfully avoid involvement with the authorities until 2014. His success in avoiding arrest should not be rewarded with a finding that the authorities were not duly diligent in executing a bench warrant because they failed to find defendant's hiding place. The present case is thus distinguishable from *Ortman*, where the record in that case reflected that the defendant had lived at the same house for over 20 years, had not "changed his name, moved, or otherwise attempted to evade the probation authorities[,]" and the probation authorities did not provide a reason for the delay in arresting the defendant. *Ortman*, 209 Mich App at 254.

Defendant claims that he suffered prejudice because "it is unclear what charges of probation violation would have been brought in 2005, nor Mr. Key's defenses" and "the allegation of new criminal conduct appears to stem from charges resulting from his 2014 arrest." Contrary to defendant's claim, the charges of probation violation he faced in 2005 were clearly spelled out in documents in the lower court record, as defendant had failed (1) to make required restitution payments, (2) to be employed, and (3) to avoid committing a new crime. Defendant also claims that "[t]he allegations of failure to report are unexplained." However, defendant does not dispute that he did not report to his probation agent, so this claim is contradicted by the clear evidence in the record. Finally, defendant asserts that he was prejudiced because of "the additional charge of 'new criminal conduct,' which had not actually occurred during the original period of probation." Essentially, defendant is claiming that he suffered prejudice because, by failing to apprehend him sooner, the probation authorities allowed defendant to continue to break the law, which resulted in his being charged with new felony criminal offenses. Defendant cannot blame the probation authorities for his own decision to continue his criminal conduct; this clearly does not establish prejudice arising from the probation authorities' lack of due diligence.[6] We note that while the delay at issue was lengthy, the reason for the delay was attributable primarily to defendant's behavior, and defendant has failed to establish any prejudice from the delay. Therefore, the trial court did not abuse its discretion in declining defendant's request to correct what defendant characterized as an invalid sentence.

---

[6] The prosecution also correctly observes that defendant was not incarcerated during the nine-year delay and so did not suffer any prejudice to his person. *People v Gilmore II*, 222 Mich App 442, 462; 564 NW2d 158 (1997).

With respect to defendant's claim that he was deprived of his right to the effective assistance of counsel by his counsel's failure to challenge the trial court's alleged lack of jurisdiction where the probation authorities did not act with due diligence, this claim is without merit. "Defense counsel is not required to make frivolous or meritless motions." *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998) (citation omitted).

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood