*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TROY LAVAUGHN JONES JR,

        Defendant-Appellant.

FOR PUBLICATION
October 28, 2024
12:34 PM

No. 365590
Allegan Circuit Court
LC No. 2021-024275-FH

Before: SWARTZLE, P.J. and REDFORD and FEENEY, JJ.

SWARTZLE, P.J.

When is a tax that is ordered and collected by a local unit of government, one that benefits that unit, not a local tax? Defendant was assessed court costs as part of his criminal sentence, and he challenges the costs as an unconstitutional tax under the Headlee Amendment. We conclude, however, that our Legislature enacted a state tax with respect to MCL 769.1k(1)(b)(*iii*), not a local one, and therefore the court costs survive constitutional challenge. Finding no other ground for reversal, we affirm defendant's conviction and sentence.

## I. BACKGROUND

In October 2020, defendant was charged with assault with intent to do great bodily harm less than murder or by strangulation, and domestic violence. The victim was his wife. He was released from jail on a conditional-bond order that prohibited contact with his wife or leaving Michigan, absent permission from the trial court.

Defendant, working as a long-haul truck driver, drove to California and back with his wife as passenger, in violation of his conditional bond. He began driving to California again, with his wife again as passenger, but was involved in a collision near Martin Township on January 10, 2021.

Allegan County Sheriff Deputies responded to the collision and learned of the bond conditions that defendant had violated. The deputies began to arrest defendant and a struggle ensued. The deputies reported that defendant fought them, kicked at them, and yelled and swore

at them before ultimately being placed in the patrol vehicle. Defendant reported that the struggle was not this combative and was precipitated by his pain from the collision.

Defendant was charged the next day with two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(c), and with a fourth-offense habitual-offender enhancement, MCL 769.12(1)(c). Defendant failed to appear in district court at his probable-cause conference a week later. On April 21, 2021, defendant again failed to appear at a pretrial conference. The trial court revoked defendant's bond and issued an arrest warrant. On May 27, 2021, defendant turned himself in to the custody of the sheriff's office, and his missed pretrial conference was rescheduled for July 2021.

On June 14, 2021, the defense attorney and prosecutor agreed to adjourn the case so that defendant could be examined for criminal responsibility and competency to stand trial. The trial court ordered the examination and adjourned the pretrial conference to November 2021. On July 28, 2021, defendant requested the trial court reinstate his bond. The next day, defendant filed a motion asserting his right to a speedy trial, which was directed at a separate domestic-violence case (not the present one). Defendant filed a variety of other motions, some indicating that he wished for the case to proceed without a competency evaluation, and others indicating that he did not wish for the case to proceed until competency was determined. On August 18, 2021, the trial court held a hearing seeking clarity on this point, and defendant stated that he did not wish for the case to proceed until his competency was determined.

The Center for Forensic Psychiatry completed its report on competency, and on September 15, 2021, the trial court found defendant competent to stand trial. The pretrial conference was set for October 2021. Defendant retained a new attorney in September 2021, and the trial court adjourned the pretrial conference to December 15, 2021. (The record on appeal does not make clear which party requested this adjournment. The prosecutor argues that it was requested by defendant's new attorney, and defendant does not dispute this.)

On December 15, 2021, the pretrial hearing was finally held, at which defendant rejected a plea offer (seemingly the offer he would later accept), and trial was set for May 2022. On January 4, 2022, defense counsel presented a second request for examination of criminal responsibility, which the trial court ordered. At a March 2022 hearing, defendant indicated that he wished to accept the plea offer, before changing his mind. Trial was rescheduled for April 12, 2022. On April 8, 2022, defendant did accept the plea offer, and he pleaded *nolo contendere* to one count of assaulting, resisting, or obstructing a police officer, MCL 750.81d(c), with a third-offence habitual-offender enhancement, MCL 769.11(c)(a).

A sentencing hearing was subsequently held. Defendant argued for dismissal of his conviction on speedy-trial grounds. The trial court denied the request and sentenced defendant to serve 460 days of incarceration with credit for all 460 days served. The trial court also imposed fees and costs, including $200 in court costs.

A Judgment of Sentence was signed on September 2, 2022. Defendant filed a notice of appeal that stated that he would be representing himself. On November 16, 2022, defendant changed his mind and requested the appointment of appellate counsel. On February 21, 2023, the trial court appointed the State Appellate Defender Office. On April 4, 2023, defendant's appellate

counsel filed an application for leave to appeal, which this Court granted. *People v Jones Jr*, unpublished order of the Court of Appeals, entered May 11, 2023 (Docket No. 365590).

We now take up the claims raised by defendant on appeal.

## II. ANALYSIS

## A. SPEEDY TRIAL

We begin with defendant's speedy-trial claim. "Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. We review trial court factual findings under the clearly erroneous standard." *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). "We review constitutional questions of law de novo." *Id*.

Both the United States and Michigan Constitutions guarantee the right in criminal prosecutions to a "speedy" trial. US Const, Am VI; Const 1963, art 1, § 20. "Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice." MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id*. "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262.

Defendant argues that he was denied his right to a speedy trial. As an initial matter, defendant's situation is different from most defendants who raise this issue, because he decided to plead *nolo contendere* before a trial was actually held. In *People v Scott*, 275 Mich App 521, 524; 739 NW2d 702 (2007), this Court held that "by pleading guilty, defendant has waived [the right to a speedy trial] for appeal and we decline to address it." And in *People v New*, 427 Mich 482, 493; 398 NW2d 358 (1986), our Supreme Court held "that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty." Taken together, *Scott* and *New* would suggest that a defendant who has pleaded nolo contendere has waived any speedy trial claim on appeal.

More recently, however, our Supreme Court has indicated that this may not be a settled issue. See *People v Horton*, 500 Mich 1034; 898 NW2d 590 (2017) (remanding for consideration of that question).[1] Although defendant has likely waived his speedy-trial claim, we will proceed out of an abundance of caution and address the claim on its merits, assuming merely for the sake of argument that waiver is not an impediment here.

## 1. LENGTH OF DELAY

---

[1] The parties ultimately settled, and the appeal was dismissed without the question being resolved. *People v Horton*, unpublished order of the Court of Appeals, entered October 16, 2017 (Docket No. 324071).

The first speedy-trial factor we consider is the length of delay between arrest and conviction. Defendant was arrested on January 10, 2021, and he pleaded *nolo contendere* on April 8, 2022. Therefore, the length of delay is a mere 15 months. Defendant does not identify any case where a delay this relatively brief weighed in favor of a defendant. Although "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge," *Barker v Wingo*, 407 US 514, 531; 92 SCt 2182; 33 L Ed 2d 101 (1972), our caselaw generally indicates that more of a delay is needed for a violation. In *People v Cain*, 238 Mich App 95, 112-113; 605 NW2d 28 (1999), for example, we described "the outer limits" of troubling delays to be approximately 31 months. *Cain* itself involved a 27-month delay, which we ruled was "somewhat lengthy" and "longer than a routine period," but ultimately not in the defendant's favor on factor (1). *Id*. at 111-112. Here, we conclude that factor (1) weighs against defendant.

## 2. REASON FOR DELAY

Next, we consider the reason for delay. A reviewing court "may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution." *People v Lown*, 488 Mich 242, 262; 794 NW2d 9 (2011). "[D]elays inherent in the court system, i.e., docket congestion, the scheduling of pretrial conferences, adjournment to permit the filing of motions and answers to motions, and so forth . . . are technically attributable to the prosecution," but these "are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). "[D]elays caused by the COVID-19 pandemic are not attributable to the prosecution when evaluating a speedy-trial claim." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114), slip op at 1.

The period from January 28 to September 15, 2021, can be primarily attributed to defendant. He initially failed to attend his hearings. His counsel then agreed to have him examined for criminal responsibility and competency, and defendant expressed a wish not to have the case proceed until such a determination was made.

The period from September 2021 to January 2022 is the only period that can be primarily attributed to the prosecutor or trial court. But even this period involved rather routine scheduling and adjournments. In January 2022, defendant filed several motions that would have required substantive attention by the trial court if defendant had not pleaded *nolo contendere* in April. Thus, the record confirms that minimal time between arrest and plea in this case involved defendant ready and willing to begin a trial. January 10 to January 28, 2021; May 27 to June 15, 2021; and September 15, 2021 to January 4, 2022, were the only periods of time when defendant was not failing to appear at hearings or requesting and waiting for his competency or criminal responsibility to be determined. This is fewer than five of the 15 months. Moreover, these periods of time between hearings were especially reasonable given the presence of the COVID-19 pandemic, and the burden and slowdown on court operations that it caused. We conclude that factor (2) weighs against defendant.

## 3. ASSERTION OF RIGHT

The third factor is defendant's assertion of the right to a speedy trial. A preliminary question on this factor is when precisely defendant first asserted his right to a speedy trial. In the

U.S. Court of Appeals for the Sixth Circuit, "a request for reduction of bail is equivalent to a request for a speedy trial." *Redd v Sowders*, 809 F2d 1266, 1271 (CA 6, 1987). Under that Court's case law, if a defendant is incarcerated at pretrial and requests a reduction in bail or bond, this can be constructively treated as the defendant asserting the speedy trial right. Michigan courts have not adopted this standard, and we need not do so today. We merely assume without deciding that he raised his right to a speedy trial early in the process and weigh this factor in defendant's favor.

## 4. PREJUDICE TO DEFENDANT

The fourth and final factor we consider is prejudice to defendant. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). "Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern. Prejudice to his defense might include key witnesses being unavailable. Impairment of defense is the most serious." *Id*. "Every incarceration results in a degree of prejudice to the person." *Id*. We look to whether the ability to defend oneself "was in any significant way prejudiced." *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973).

Defendant is correct that he was incarcerated from May 2021 to April 2022, which was prejudice to his person. But, as defendant acknowledges, impairment of his defense is the more serious aspect of prejudice to consider when analyzing a speedy-trial claim. Defendant makes a vague claim that he was pressured into pleading by the delay and that he would have been in a stronger position if a trial had occurred earlier. And yet, defendant provides no elaboration on how his defense would have been stronger with an earlier trial date. The final trial date had been set for April 12, 2022. Defendant decided to enter a plea on April 8, 2022. This indicates that his plea did not come from the pressure of wanting to end his pretrial incarceration, but instead was a decision that he would rather take the plea offer than go to trial. Defendant makes no argument that any evidence or witnesses had become unavailable or more difficult to obtain. The prejudice to the person that defendant identifies is outweighed by the notable lack of any prejudice to his defense. Factor (4) weighs heavily against defendant.

When considering all of the factors together, we conclude that defendant was not denied the right to a speedy trial. Even if we assume that he asserted his right early in the judicial process, the delay was relatively brief; most of the delay was not attributable to the prosecutor or trial court; and defendant has not identified any prejudice to his defense. Accordingly, defendant's first claim on appeal fails.

## B. COURT COSTS

## 1. THE HEADLEE AMENDMENT

Next, defendant challenges the imposition of court costs. Defendant does not argue that his court costs were improperly calculated or not supported by the record. Instead, he asserts a facial challenge to MCL 769.1k(1)(b)(*iii*), claiming that the costs are an unconstitutional tax in violation of Const 1963, art 9, § 31, part of the so-called "Headlee Amendment." *Airlines Parking, Inc v Wayne Co*, 452 Mich 527, 529 n 1; 550 NW2d 490 (1996). "When a party asserts a facial challenge to the constitutionality of a statute, the party must demonstrate that no circumstances

exist under which the statute would be valid." *People v Dillon*, 296 Mich App 506, 510; 822 NW2d 611 (2012).

To preserve a challenge to court costs, the defendant must "object when the trial court ordered [the defendant] to pay costs and attorney fees." *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Defense counsel raised no objection to any of the costs or fees imposed. Therefore, defendant did not preserve this issue, and we review it for plain error.[2] *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 774.

The Headlee Amendment was adopted in 1978. Const 1963, art 9, §§ 25-34. By approving the Headlee Amendment, voters of this state made clear that "local funding and taxation" must be in the hands of those who are "most affected, the local taxpayers." *Durant v State Bd of Ed*, 424 Mich 364, 383; 381 NW2d 662 (1985). "The ultimate purpose of the Headlee Amendment was to place public spending under direct popular control." *Shaw v City of Dearborn*, 329 Mich App 640, 652; 944 NW2d 153 (2019) (cleaned up). This purpose can be gleaned from the text of the amendment itself:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

## 2. LOCAL COURT COSTS ARE A "STATE TAX"

Defendant takes aim at the state statute that authorizes local courts to impose certain costs on criminal defendants. The version of MCL 769.1k(1) in effect at the time of defendant's sentencing stated, in relevant part, as follows:

> If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:

---

[2] Defendant did not set forth his Headlee Amendment argument as part of an original action in this Court under Const 1963, art 9, § 32. Thus, by instead pursuing his unpreserved argument in this direct criminal appeal, defendant must proceed under the plain-error standard of review. With that said, because defendant's argument fails on its own merits, see *infra*, the lens by which we review defendant's claim—as an original action or on plain-error review—has no practical import.

* * *

(b) The court may impose any or all of the following:

* * *

(*iii*) Until October 1, 2022, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.  [MCL 769.1k(1), as amended by 2020 PA 151.]

MCL 769.1k first took effect in 2006.  2005 PA 316.  The only change made for the current version of MCL 769.1k(1) was refreshing the date provided in MCL 769.1k(1)(b)(*iii*) to December 31, 2026.  2024 PA 38.

We begin by clearing away some of the analytical brush.  First, the costs imposed by local courts under MCL 769.1k are considered taxes, not fees.  *People v Cameron*, 319 Mich App 215, 228-229; 900 NW2d 658 (2017).  Second, MCL 769.1k(1)(b)(*iii*) went into effect after the effective date of Const 1963, art 9, § 31; thus, if the costs are determined to be local in nature, then the Headlee Amendment would apply to them.  Third, as local political subdivisions of the state, *Thirty-Sixth District Court v Owen*, 345 Mich App 637, 645; 8 NW3d 626 (2023), we presume for purposes of defendant's claim that local courts qualify as "[u]nits of local government" under the Headlee Amendment.  Finally, local voters did not approve the imposition of court costs as part of criminal sentencing.  All four of these points favor defendant's position.

The key question remaining is whether MCL 769.1k(1)(b)(*iii*) is a state tax (and therefore not bound by the local-voter requirement) or a local tax (which would be bound).

Our Supreme Court addressed a similar question in the context of an airport-parking tax in *Airlines Parking, Inc*, 452 Mich at 529.  As the *Airlines Parking* Court made clear, the key consideration in a case like this is which entity—the state or local unit of government—"imposes or levies the tax in question."  *Id*. at 534.  This consideration may not always be conclusive, "[h]owever, because it is at least theoretically possible that the state could levy a tax that was local in character."  *Id*.

In *Airlines Parking*, the Court identified several features that weighed in favor of treating the airport-parking tax as a state tax, not a local one.  These included: (1) it was "an excise tax," and the Constitution authorized the Legislature to enact such taxes; (2) it was styled as a state tax, had "the structural attributes of a state tax," and served "a state purpose"; (3) "[i]t was enacted by the Legislature and [was] administered by the state"; (4) the state collected the funds and credited them to the parking fund; (5) there was "a statutory formula"; (6) the state retained any interest and penalties from delinquent taxes; (7) the statute was subject to annual appropriations and

therefore the revenues were "subject to redirection by the Legislature"; (8) the state retained the discretion to discontinue the taxing scheme; and (9) the tax served a statewide purpose, in that any other airport across the state that qualified in the future would be subject to the same scheme. *Id*. at 534-538.

The *Airlines Parking* Court contrasted these features with those typical of a local tax, which "are collected by local government, administered directly by that local entity, and spent by the local government according to local fiscal policy." *Id.* at 536-537. The mere fact that a tax might have a disproportionate impact on a particular local unit of government at a particular point in time was not dispositive. *Id*. at 538.

Taking our guide from *Airlines Parking*, we conclude that the tax authorized by MCL 769.1k(1)(b)(*iii*) is better characterized as a state tax, rather than purely local one. To be sure, there are features of the court-costs scheme that appear to be more local than the airline-parking tax in *Airlines Parking*. On the one hand, for example, local courts impose the costs as part of criminal defendants' sentences, and the courts are ultimately responsible for collecting the funds. The amounts collected are used to defray local courts' costs, and the state neither collects the amounts nor retains any interest or penalties. Local courts even have the discretion whether to impose the costs or not.

On the other hand, the court-cost scheme has several characteristics that point to a statewide tax. First, and most critically, the imposition of court costs depends necessarily on statutory authority provided by our Legislature. The policy of permitting the defrayment of certain costs of local courts with a tax imposed on criminal defendants is one enacted by our *statewide* legislative body, not a local unit of government. Second, although local courts have the discretion whether to impose costs or not, if they decide to do so, then they must do so according to the statutory condition that the imposed costs be "*reasonably related* to the actual costs incurred by the trial court." MCL 769.1k(1)(b)(*iii*) (emphasis added). In other words, local courts do not have unfettered discretion to impose any costs imaginable. *People v Johnson*, 336 Mich App 688, 700-701; 971 NW2d 692 (2021); *Cameron*, 319 Mich App at 230. Third and relatedly, a separate statewide body, the State Court Administrative Office, has developed a recommended formula for local courts to use when imposing costs in a criminal sentencing. See *Cameron*, 319 Mich App at 225-226. Indeed, the trial court in this case appears to have followed that formula. See 57th District Court, *Information about any Fine, Cost, or Assessment Imposed under MCL 769.1k(1)* <https://www.allegancounty.org/home/showpublisheddocument/1408/637688287178570000> (accessed October 23, 2024). Fourth, our Legislature has statutorily directed how local courts must distribute monies collected from a criminal defendant, e.g., victim payments, defrayment of costs, etc. MCL 775.22(2)-(3); MCL 780.766a(2)-(3). Fifth, the authority to impose these costs can be stripped at any time by our Legislature and, indeed, the current authorization will sunset in 2026. Sixth and finally, in contrast to *Airline Parking*'s future hypothetical airport that arguably meant that the tax had an intended statewide reach, the authorization for local courts to impose costs on criminal defendants has a current actual benefit to courts across the state. There is nothing in the statutory authorization that restricts the tax to certain isolated parts of the state; rather, courts across the state can participate in this program.

Given these characteristics, we conclude that the court costs permitted under MCL 769.1k(1)(b)(*iii*) are a state tax, not a local one, for purposes of the Headlee Amendment. The

funds collected do benefit local courts, those courts have the discretion whether to collect them or not, and the funds collected remain in the hands of local units of government, not the state. But in all other material respects, the imposition of court costs reflects a state policy, they have a statewide effect, and they are subject to state-imposed restrictions and requirements. Accordingly, defendant has not met his burden of persuasion that the court costs levied here violated the Headlee Amendment. As a result, there was no plain error, and defendant's second claim on appeal fails.

## C. APPEAL DEADLINE

For his final claim on appeal, defendant argues that the trial court delayed in appointing appellate counsel, and this led to further delays that prejudiced his appeal. "A defendant must raise an issue in the trial court to preserve it for [appellate] review." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). After being appointed appellate counsel, defendant made no motion requesting that his appellate filing deadline be extended. Therefore, this issue was not preserved and is reviewed for plain error. *Carines*, 460 Mich at 764.

MCR 7.205(A)(2) sets forth the time to file a criminal appeal. Criminal defendants are given the later of six months after the final judgment, or 42 days after certain events such as the appointment of counsel or filing of transcripts. MCR 7.205(A)(2)(a)-(b). With that said, MCR 6.428 provides for a "restarting" of the time to file an appeal if the defendant "was denied the right to appellate review or the appointment of appellate counsel due to errors by the defendant's prior attorney or the court, or other factors outside the defendant's control."

This claim is without merit. First, defendant does not identify any way in which the trial court erred. The initial months when appellate counsel was not appointed were due to defendant desiring to represent himself. After he changed his mind, the trial court appointed defendant appellate counsel. MCR 7.205(A)(2)(b)(*i*) specifically provides for an appellate deadline that takes account of when appellate counsel is actually appointed, and everything the trial court did was in line with this. Defendant does not identify any instance when the trial court used, or even announced, an incorrect deadline.

Second, even if there had been an error made, the issue is moot. An issue is "moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Defendant moved for leave to appeal, and this Court granted the motion. Defendant has not identified any legitimate problem or deficiency caused by proceeding by leave granted, and we are not aware of any here.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm defendant's conviction and sentence.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney