*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 16, 2025
10:28 AM

Plaintiff-Appellee,

v

No. 368165
Wayne Circuit Court
LC No. 19-008685-01-FC

MATTHEW THOMAS HARRISON,

Defendant-Appellant.

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to do great bodily harm (AWIGBH), MCL 750.84, and aggravated domestic violence, MCL 750.81a(2). Defendant argues on appeal that his right to a speedy trial was violated, the trial court erred when sentencing him, and he was denied the effective assistance of counsel. Defendant further argues in a Standard 4 brief that the trial court abused its discretion by denying his request for an *in camera* review of the victim's medical records, violated defendant's right to present a defense, and displayed judicial bias, and that his convictions resulted in a double-jeopardy violation. We affirm.

## I. BACKGROUND

In July 2019, defendant and the victim were in a relationship and lived together. In this incident, the victim was in bed watching television when defendant walked into the bedroom and hit her in the head and face more than 10 times with a metal pipe. The victim tried to protect her head, and defendant hit her in the knee, ribs, and other parts of her body to the point that she could no longer fight back or protect herself. Defendant admitted that he struck the victim approximately 15 times, but he claimed at trial that he did so after he woke up to her punching him in the face. Defendant thought that he might have killed the victim. He moved her into the bathroom, removed her clothes, and placed her in the shower, where he ran cold water over her. The victim could not stand up.

Defendant pulled the victim out of the shower, dropped her on the tile floor, and put her back on the bed, at which point she lost consciousness. The victim claimed that defendant sexually assaulted her, tied an extension cord around her ankles, called her names, and prevented her from

leaving. Defendant denied those allegations, but the parties agreed that the victim needed defendant's help to use the bathroom following the assault. The victim claimed that she wanted to go to the hospital, but defendant contended that she refused to go so that he would not be arrested. According to the victim, defendant threatened to staple shut the wounds on her head, while defendant said that they decided together to order a skin stapler to address the victim's wounds. Defendant claimed that once the stapler arrived, the victim did not want to use it, so they threw it into a dumpster. Defendant further claimed that the victim could walk and could have left the house.

Approximately two weeks after defendant initially assaulted her, the victim left when defendant was asleep. She went to a neighbor's house and called the police. Sergeant Eric Munson responded and observed that the victim had matted hair with dried blood on it, scabs and scratches on her forehead, swollen eyes, and wounds on her arms and legs. The victim's voice was shaky, she would not look away from the door, and she said, "He's gonna kill me" and "Don't go over there." Other police officers observed blood throughout the couple's home. A forensic scientist confirmed that blood on a pair of pants, carpet, and the bathroom floor likely was from defendant. Blood from the bedroom carpet and bathtub was likely from the victim.

At the hospital, doctors determined that the victim had sustained fractures to her nose, right arm, right hand, and left knee, and she had multiple rib and spine fractures. The victim received surgery on her hand and knee, and she was hospitalized for six days.

Defendant was arrested in August 2019, but his trial did not occur until August 2023. In the interim, defendant had multiple defense counsel. Appearing *in propria persona*, defendant moved the trial court several times regarding his right to a speedy trial, in addition to filing several appeals and original actions in this Court. Our Michigan Supreme Court declined to address defendant's speedy trial and habeas corpus challenges. See, e.g., *Harrison v Wayne Circuit Court Judge*, 511 Mich 1121; 992 NW2d 897 (2023).

Following a September 2019 order for evaluation of competency and criminal responsibility, defendant's preliminary examination occurred in November 2019. Defense counsel failed to appear at hearing in January 2020, and the trial court appointed new counsel. The February 2020 trial date was subsequently adjourned until April 2020 to give the new defense counsel time to prepare and to allow for forensic testing to be completed. In response to the onset of the global pandemic in March 2020, defendant's trial was further delayed. The trial court acknowledged in one denial of defendant's speedy-trial motions the impact of COVID-19 on its ability to hold trials.

Defendant obtained new counsel in November 2020, and she requested an adjournment to conduct additional discovery. The trial court granted defendant's request for a reduced bond in May 2022, and he was released. In October 2022, defense counsel moved to withdraw and new counsel was appointed. Soon after, the prosecutor moved to revoke or increase defendant's bond on the basis of a violation of his no-contact order. Defendant failed to appear at a hearing on the motion, and he was later taken into custody. Defense counsel subsequently moved to withdraw. The trial court appointed new counsel in December 2022. Defendant requested the victim's psychiatric records during discovery, but the trial court denied his request.

During the victim's testimony at trial, defense counsel asked her if there was a time when she became violent with defendant. The prosecutor objected, and the trial court determined that that line of questioning was not relevant or probative and that defendant gave no notice of intent to offer the evidence. The victim admitted, however, that there was violence between the parties during their relationship. She also testified that she had previously been addicted to heroin. Defendant testified about meeting the victim at an inpatient rehabilitation center and about the victim's erratic behavior while under the influence. Specifically, he testified that the victim drank to excess, wanted to fight people for no reason, had drunken rages, put out a cigarette on him, and, in this incident, repeatedly punched him in the face before he assaulted her with the pipe.

Sergeant Munson testified that, in his opinion, the victim appeared to be terrified. Defense counsel objected, and the trial court sustained the objection. Defense counsel also objected to Sergeant Munson's testimony about the victim's statements that defendant was going to kill her. The trial court initially sustained the objection, but the prosecutor argued that the statements were admissible under the excited-utterance exception, and the trial court permitted the testimony. The jury found defendant guilty of AWIGBH and aggravated domestic violence, but not guilty of torture, MCL 750.85, unlawful imprisonment, MCL 750.349b, and two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b.

Relevant to this appeal, the trial court assessed 50 points for offense variable (OV) 7, MCL 777.37; 15 points for OV 8, MCL 777.38; and 10 points for OV 10, MCL 777.40. During the sentencing hearing, defense counsel asked the trial court to reconsider its assessment of points for OV 7, but did not object to the scoring of OV 8 or OV 10. The trial court sentenced defendant to 47 months to 15 years in prison for the AWIGBH conviction and one year in jail for aggravated domestic violence.

Defendant now appeals.

## II. ANALYSIS

## A. SPEEDY TRIAL

First, defendant argues that his right to a speedy trial was violated. Whether a defendant was denied the right to a speedy trial involves an issue of constitutional law that this Court reviews de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). We review for clear error any underlying factual findings. *Id*. Clear error exists when this Court is left with the definite and firm conviction that a mistake has been made. *People v Jeffry Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009).

A criminal defendant has the right to a speedy trial under both the United States Constitution and the Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. When determining whether a defendant has been denied the right to a speedy trial, this Court considers "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261.

Defendant was arrested in August 2019, but his jury trial did not occur until August 2023. A delay over 18 months "is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice to defendant." *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158

(1997). Accordingly, we must consider the remaining factors to determine if defendant was deprived of his right to a speedy trial. See *Williams*, 475 Mich at 262.

Turning to the reasons for the delay, some delays were attributed to each party, but the majority of the delays were neutral or attributable to defendant. The three-month period between defendant's arrest and preliminary examination may partially be attributable to the prosecution, but with minimal weight, because these were "delays inherent in the court system." *Gilmore*, 222 Mich App at 459. Moreover, some of the delay appears to have been related to a request for evaluation of competency and criminal responsibility. See *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365590); slip op at 4. Further, delays resulting from the withdrawal of defense counsel cannot be attributed to the prosecution. See *People v Collins*, 388 Mich 680, 691; 202 NW2d 769 (1972). Similarly, delays resulting from defense counsel's request for adjournment and additional discovery is not attributable to the prosecution. As for the delays resulting from the pandemic, this Court held in *People v Quatrail Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5, "that delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." Overall, this record does not demonstrate that the majority of the delay was attributable to the prosecutor.

As to defendant's assertion of his right to a speedy trial, defendant filed several pretrial motions and interlocutory appeals or original actions in this Court. This factor weighs in defendant's favor.

Turning to prejudice, "[t]here are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *Collins*, 388 Mich at 694. Regarding personal prejudice, defendant asserts that he suffered untreated dental problems and sleep apnea, plus the anxiety of awaiting trial. "Pretrial incarceration necessarily results in a degree of prejudice to the person." *Quatrail Smith*, ___ Mich App at ___; slip op at 6 (cleaned up). Anxiety alone, however, is not sufficient to establish a speedy-trial violation. See *Gilmore*, 222 Mich App at 462.

Prejudice to the defense is the most serious form of prejudice in a speedy-trial claim. *Quatrail Smith*, ___ Mich App at ___; slip op at 6. This is because a defendant's inability to prepare a case adequately impacts the fairness of the process. See *Collins*, 388 Mich at 694. Defendant asserts that one of his primary witnesses died in September 2021. "[P]rejudice is obvious" when a witness dies. *Quatrail Smith*, ___ Mich App at ___; slip op at 6. Defendant has not explained, however, what this witness would have presented. Further, defendant refers to unnamed witnesses who allegedly visited the home while the victim claims to have been held captive. Defendant did not identify those witnesses, describe the nature of their testimony, or offer proof that he attempted without success to call them as witnesses at trial. Therefore, although defendant has demonstrated a level of prejudice, he has not demonstrated that the delay impaired his defense to such an extent that his right to a speedy trial was violated.

## B. OFFENSE VARIABLE SCORING

Next, defendant argues that the trial court improperly assessed points for OV 7, OV 8, and OV 10. We review de novo the interpretation and application of the sentencing guidelines. *People v Dupree*, 511 Mich 1, 5; 993 NW2d 185 (2023). When a defendant does not object to the scoring

-4-

of the variables at sentencing, however, this Court reviews for plain error affecting substantial rights. See *People v Bergman*, 312 Mich App 471, 497; 879 NW2d 278 (2015). To obtain relief under the plain-error rule, a defendant must demonstrate that an error occurred, the error was clear or obvious, and the plain error affected substantial rights by affecting the outcome of the proceedings. *People v Dion Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Reversal is only warranted in light of a plain error when the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of [a] defendant's innocence." *Id*. at 280. A preponderance of the evidence must support a trial court's factual findings during sentencing. *People v Teike*, 348 Mich App 520, 525-526; 19 NW3d 733 (2023).

First, OV 7 concerns aggravated physical abuse. Under MCL 777.37(1)(a), a trial court may assess 50 points when a defendant treated a victim "with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." This variable applies to crimes that are "particularly heinous," in which a defendant acted to increase considerably a victim's fear. *People v Rodriguez*, 327 Mich App 573, 578; 935 NW2d 51 (2019). In this case, defendant admitted to striking the victim 15 times with a metal pipe. The victim sustained multiple fractures and facial injuries, required surgery, and was hospitalized for six days. The record supports the trial court's determination that defendant engaged in excessive brutality.

Second, OV 8 involves victim asportation or captivity. A trial court may assess 15 points when the "victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). As defendant argues on appeal, the trial court was not permitted to consider acquitted conduct when sentencing defendant. See *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019). The record demonstrates, however, that defendant moved the victim, to a place of potentially greater danger, and held her captive beyond the time necessary to commit the offense when he put her into the shower. Therefore, it was not plain error for the trial court to assess 15 points. Even if the trial court's assessment of points for OV 8 was erroneous, however, assessing zero points would not result in a difference of the recommended minimum sentence under the sentencing guidelines. See MCL 777.65. Resentencing is not required when a scoring error does not change the guidelines range. See *Dupree*, 511 Mich at 14.

Next, OV 10 addresses exploitation of a vulnerable victim. A trial court may assess 10 points when the offender exploited a domestic relationship. MCL 777.40(1)(b). "'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). Here, it is uncontested that defendant and the victim had been romantically involved and lived together. Defendant exploited this relationship because he was able to attack the victim while she was in bed. The trial court did not plainly err by assessing 10 points.

Defendant argues in the alternative that defense counsel was ineffective for failing to object to the scoring for OV 8 and OV 10. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Counsel

is not ineffective for failing to raise a meritless issue. *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019). Because the trial court did not err when assessing points, defense counsel was not ineffective for failing to object to the assessment of points.

## C. *IN CAMERA* REVIEW

Defendant argues in his Standard 4 brief that the trial court abused its discretion by denying his request for an *in camera* review of the victim's medical records. We review for an abuse of discretion a trial court's decision to deny the request for an *in camera* review. *People v Laws*, 218 Mich App 447, 455; 554 NW2d 586 (1996). A trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"[T]here is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege." MCR 6.201(C)(1). The trial court shall, however, conduct an *in camera* inspection of the records if the "defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense." MCR 6.201(C)(2). An *in camera* inspection, however, is not appropriate if the record demonstrates "that the party seeking disclosure is on a fishing expedition to see what may turn up." *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994) (cleaned up). A defendant may not support his request for an *in camera* review with nothing "more than a generalized assertion." *Id*. at 681.

In this case, defendant has not shown that the requested information was material or necessary to his defense. See *People v Davis-Christian*, 316 Mich App 204, 213; 891 NW2d 250 (2016). Defendant argues that the requested records would have provided the victim's psychiatric history and her history of drug abuse. He believes that she was not taking her prescribed medications at the time of the incident, and her records would show that she had violent tendencies and delusional behaviors. Defendant's contentions, however, are mere "generalized assertions." See *Stanaway*, 446 Mich at 681. Defendant has not articulated specific facts to indicate that the medical records were necessary for him to prepare his defense. To the extent that defendant argues that the records would pertain to the victim's credibility, that argument could be made in most cases involving psychiatric records. Defendant argues that the records would demonstrate that the victim committed perjury regarding her recovery from heroin addiction, but defendant had the opportunity to testify about the victim's erratic behavior while under the influence, and the record included reference to the victim's heroin use. Defendant has not shown that the absence of the victim's records prevented him from presenting a sound defense. Accordingly, the trial court did not abuse its discretion by denying defendant's request for an *in camera* review.

## D. RIGHT TO PRESENT A DEFENSE

Next, defendant contends that the trial court impeded his defense by restricting his testimony, curtailing defense counsel's questions during cross-examination, and improperly excluding evidence. "We review de novo as a question of law whether evidence is admissible under a rule or statute, but we review for an abuse of discretion the trial court's ultimate decision whether to admit the evidence." *People v Spaulding*, 332 Mich App 638, 649; 957 NW2d 843 (2020). An evidentiary error is grounds for reversal only if the error was more likely than not

outcome-determinative. *Id*. Finally, we review de novo whether a defendant was deprived of his constitutional right to present a defense. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Defendant argues that the trial court precluded him from asserting self-defense. Although the trial court did not allow all instances of the victim's prior bad acts into the record, some evidence was admitted. Generally, specific instances of a victim's conduct may not be admitted to show character. *People v Harris*, 458 Mich 310, 319; 583 NW2d 680 (1998). An exception may exist, however, if the instances are raised to demonstrate "some matter apart from character." *Id*. In cases involving self-defense, a victim's specific acts of threats or violence may be admissible "to show the defendant's apprehensive state of mind." See *People v Cooper*, 73 Mich App 660, 664; 252 NW2d 564 (1977) (cleaned up).

First, the trial court, when determining that the evidence about the victim's prior bad acts was irrelevant and not probative, also determined that defendant failed to provide notice of intent to offer the evidence under MCL 768.27b. This statute, however, requires a *prosecutor* to provide notice of intent to offer evidence of prior bad acts by a defendant, rather than a requirement of defense counsel to provide notice of intent to offer evidence of a victim's prior acts.

As previously noted, defendant was able to testify about some of the victim's previous violence. Even assuming that the trial court erred by excluding additional specific acts of violence, however, defendant has not demonstrated that the exclusion of evidence was outcome-determinative. This determination is made "in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (cleaned up). Defendant alleges that he could have presented seven videos of the victim attacking him and an audio threat she made months before this assault. Given the undisputed evidence that defendant struck the victim 15 times, however, causing severe injuries, the additional evidence would not have bolstered defendant's self-defense position. Moreover, the victim admitted that there was previous violence in the relationship, and defendant had the opportunity to testify about the victim's history of drinking, wanting to fight people, putting out a cigarette on him, and punching him immediately before he assaulted her with the pipe.

There is no basis to find on this record that defendant was unable to present his self-defense theory or that a different outcome would have occurred had the trial court admitted additional evidence. There was strong evidence that defendant was guilty of AWIGBH and aggravated domestic violence, including defendant's own admission that he hit the victim so many times that he thought that he had killed her.

Additionally, defendant has also not demonstrated that evidence about the victim's heroin overdose and hospitalization that occurred months before the assault would have bolstered his self-defense claim, or how the exclusion of evidence about how he lost his job was relevant to his fear that the victim would cause him great bodily harm. Further, defendant cites instances in which the trial court sustained the prosecutor's hearsay objections, but he does not argue that any hearsay exceptions applied to allow the evidence to be admitted or how the trial court's proper action of sustaining objections was detrimental to his defense. Accordingly, when the evidence that defendant committed the assault was overwhelming, defendant has not demonstrated that his right to present a defense was impeded.

# E. JUDICIAL BIAS

Defendant additionally argues that judicial bias denied him a fair trial. Because defendant did not preserve this claim in the lower court, we review it for plain error affecting substantial rights. See *Dion Anderson*, 341 Mich App at 279. The right to due process requires that a defendant appear before a "neutral and detached magistrate." *People v Loew*, 340 Mich App 100, 110; 985 NW2d 255 (2022) (cleaned up). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (cleaned up). The standard of impartiality is that "a judge should act neither as an advocate nor an adversary in any criminal proceeding." *Loew*, 340 Mich App at 111.

In support of his claim, defendant takes issue with the trial court's rulings, primarily regarding objections. Judicial rulings alone, however, do not provide a basis for finding judicial "bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598 (cleaned up). When determining whether a trial court's actions deprived a defendant of a fair trial, this Court determines whether the contested conduct "pierces the veil of judicial impartiality," which occurs "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury." *People v Stevens*, 498 Mich 162, 170-171; 869 NW2d 233 (2015).

Defendant argues that the trial court was dismissive and interrupted even when no objections were raised. Specifically, the trial court interrupted defense counsel's cross-examination of the victim to remind everyone to speak one at a time and for counsel to allow the victim to complete her answer; announced that all cell phones must be turned off, rather than merely silenced; paused the trial for a moment; instructed defendant to answer the question rather than give a "buildup" before getting to the answer; and asked defendant to repeat testimony when the trial court did not hear him. These instances do not rise to the level of judicial partiality. There is no basis to preclude a trial judge from asking a witness to repeat testimony that the judge could not hear. Further, a judge may instruct a witness to answer questions rather than give narratives. See MRE 611. Trial judges have discretion to control courtroom conduct, see *People v Cole*, 349 Mich 175, 199; 84 NW2d 711 (1957), and rules against cell phone and parties speaking over each other are effective ways to manage the trial.

Defendant also argues that the trial court improperly sustained prosecutor objections. Defendant claims the objections were baseless, but does not articulate how the rulings were incorrect. Likewise, defendant does not demonstrate how the trial court's decisions to overrule defense counsel objections were incorrect. Defendant specifically argues that the trial court erred by overruling defense counsel's objection when Sergeant Munson testified that the victim was terrified. The trial court, however, sustained that objection, and it was not improper to allow Sergeant Munson to testify later that the victim was shaky. The trial court also initially sustained defense counsel's objection to Sergeant Munson's testimony about the victim's statements, but properly admitted the testimony on the basis of the excited-utterance exception to hearsay. MRE 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. The victim was observably under the stress of the event, and her statements related to the circumstances of the assault. Accordingly, her statements to Sergeant Munson were

admissible as excited utterances. See *People v Larry Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998).

Next, defendant argues that the trial court improperly overruled defense counsel's objection to the victim's redirect examination testimony about medical assistance for being beyond the scope of cross-examination. The victim's testimony on cross-examination, however, included statements about her medical needs, and the testimony was not improper.

The transcripts do not reflect any impropriety in the tone or demeanor of the judge, and the judge did not appear to favor one side over the other. Over the four-day trial, the trial court sustained and overruled objections made by both sides. Further, the trial court instructed the jury that its questions and rulings were not meant to reflect its opinion about the facts. We presume the jury followed its instructions. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Therefore, defendant has not demonstrated judicial impropriety.

## F. DOUBLE JEOPARDY

Finally, defendant argues that his convictions violate double-jeopardy principles because he was convicted of two separate assaultive crimes for the same incident. We review for plain error an unpreserved double-jeopardy argument. *People v Barber*, 332 Mich App 707, 712; 958 NW2d 288 (2020).

The United States and Michigan Constitutions each prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15. These guarantees protect a defendant from successive prosecutions and multiple punishments for the same offense. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). When reviewing a double-jeopardy claim, we generally consider whether "each offense contains an element not contained in the other offense." *People v Dickinson*, 321 Mich App 1, 11; 909 NW2d 24 (2017).

This case, however, involves convictions of AWIGBH and aggravated domestic violence, and "the Legislature has clearly and explicitly expressed its intent that a person can be convicted and sentenced for both AWIGBH and another offense arising out of the same conduct." *People v McKewen*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 158869); slip op at 11. MCL 750.84(3) provides that an AWIGBH conviction "does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation this section." Under the statute's plain language, multiple convictions for defendant's actions here were permitted.

Affirmed.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle

-9-